ILLINOIS CENTRAL RAILROAD CO. *v.* LINCOLN LATHAM.

RAILROADS.  *Master and servant.  Trespasser.  Brakeman.  Scope of duty.*

   A railroad company is not liable for the act of its brakeman in forcibly ejecting a trespasser from a moving train because he refused to pay him for the privilege of riding, where it appears that the money, which was less than the fare, was not demanded as such, but for the brakeman's private use, and that the rules of the company required brakemen to notify the conductor, and act under his orders in ejecting trespassers.

FROM the circuit court of the first district of Panola county.  HON. EUGENE JOHNSON, Judge.

Action by Lincoln Latham against the Illinois Central Rail-

road Company to recover damages for personal injuries.   The facts are stated in the opinion.   There was a judgment for plaintiff for $2,500.   Motion for a new trial overruled, and defendant appeals.

_Mayes & Harris_, for appellant.

On the facts of this case plaintiff was not entitled to recover. If we concede that the brakeman had authority generally to eject trespassers from freight trains, we think that this case comes within the principle laid down in the New York cases, to the effect that the company is not liable when the brakeman uses his authority as a mere cover for the accomplishment of an independent and wrongful purpose of his own.   87 N. Y., 32; 64 _Ib._, 129.

Assuming Latham's testimony to be true, it is manifest that the brakeman was using his authority, if he had it, as a mere cover to extort money from Latham for his own use.   Plaintiff was riding on top of a car to avoid paying fare.   The regular fare was $1.50.   The brakeman, who, by the rules of the company, was required to notify the conductor, concealed his presence, and demanded of him fifty cents.   The brakeman had no authority to eject a trespasser, except under the orders of the conductor.   It is perfectly clear that the brakeman did not act within the scope of his duty, but was subordinating his master's business to his own interest and for his own personal gain.   See 82 Tex., 561; 86 Penn., 418; 8 Am. & Eng. R. R. Cas., 117; 35 W. Va., 492.   On the general question as to the authority of a brakeman, see 116 Mo., 81; 56 Fed. Rep., 1014.

The case is controlled by _Railroad Co._ v. _McAfee_, 71 Miss., 70, and _Railroad Co._ v. _Harris_, _Ib._, 74.

_G. D. Shands_, for appellee.

On the question whether the brakeman who ejected plaintiff was on duty, and acted within the scope of his duties, there is a sharp conflict of evidence, and the question was for the jury. _Railroad Co._ v. _Cantrell_, 70 Miss., 329.   It is within the

scope of a brakeman's duty to eject trespassers.    *Railroad Co.*
v. *Kelly*, 14 Pac. Rep., 172.

It was shown by oral evidence and by the printed rules of
the company that it is the duty and the common practice of
appellant's brakemen to exclude trespassers on failure to pay
fare.    The mere custom of doing this is enough to establish
that it was their duty.    3 Am. St. R., 220, s. c. 48 Ark.,
187.    Whether the act of a servant is within the scope of his
duty is for the jury.    120 N. Y., 117; 17 Am. St. R., 611.

A master is responsible for the mode in which a servant per-
forms an act within the scope of his duty.    27 Am. St. R.,
901; *Railroad Co.* v. *Seals*, 13 So. Rep. (Ala.), 917.    The
case differs from *Railroad Co.* v. *McAfee*, in that this plaintiff
was thrown off because he either would not or could not pay
fifty cents for fare.    If it be true that the brakeman intended
to appropriate the money to his own use, it was without the
knowledge or collusion of plaintiff, and does not relieve the
company from responsibility.

Argued orally by *J. B. Harris*, for appellant.

WHITFIELD, J., delivered the opinion of the court.

Accepting the plaintiff's testimony as true, it appears that he
was riding on top of the coach to avoid the payment of his fare,
and did not go back to the caboose because he feared the con-
ductor would say something.    He got on at Memphis to go to
Sardis.    The fare was $1.50.    The brakeman did not demand
$1.50, but fifty cents; he did not eject him when the demand
for fifty cents was first made and declined, and not until the
transit was nearly terminated.    Under the rules, introduced by
plaintiff, and as explained by Homer Williams, a witness for
plaintiff, it would have been the duty of the brakeman to report
to the conductor the presence of plaintiff on the train, and act
as to his ejection under the conductor's orders.    The brakeman
made no report to the conductor whatever, but acted independ-
ently of him.    Failing to get the money—the fifty cents—he

cursed the plaintiff and shoved him off the moving train. Surely, in no just and reasonable view can it be held that in the acts of the brakeman thus done was he acting in his master's business, or with intent to perform any duty due to the master. He was not demanding "fare," but money to put in his pocket. He did not eject him under the orders of the conductor, nor when—aside from any orders of the conductor—he first discovered him, nor at the next station. He was plainly attempting to extort money for his private use.

We are not prepared to hold that it may not be the implied duty of a brakeman to eject trespassers, on the idea clearly put by Judge Andrews in 87 N. Y., 28, that "the implied authority in such a case is an inference from the nature of the business, and its actual daily exercise according to common observation and experience," a statement of the law copied literally and approved in *Kansas City, etc.*, v. *Kelly*, in 14 Pacific Reporter, 173. It is true the contrary is held in 35 W. Va., 492, and possibly in other cases, but what may be the better reason is not now before us, and we leave this open, as not necessary now to decide. The question here is, whether the brakeman, in doing what he did as he did it, was acting for the company or in the accomplishment solely of his own independent, wilful, malicious and wicked purposes, using his authority to eject trespassers, if any there was, as a mere cover under which to extort money from appellee, not for fare, but for his pocket? The case in 14 Pacific Rep., 173, is clearly a case where the injured boy was ejected from the train as a trespasser, simply to get him off, as being improperly on the train, in execution of what the court held the implied duty of the brakeman to eject trespassers. Manifestly, in that case, the brakeman acted in discharge of what he deemed a duty to the company. There was no hint in that case of any act done by the brakeman for his own private benefit or to gratify even private malice.

The true rule is thus clearly announced in 64 N. Y., p. 136, as follows: "It seems to be clear . . . that the act of

the servant causing actionable injury to a third person does not subject to civil responsibility in all cases where it appears that the servant was, at the time, in the use of. his master's property, or because the act, in some general sense, was done while he was doing his master's business, irrespective of the real nature and motive of the transaction.   On the other hand, the master is not exempt from responsibility in all cases, on showing that the servant, without express authority, designed to do the act or the injury complained of.   If he is authorized to use force against another, when necessary in executing his master's orders, the master commits it to him to decide what degree of force he shall use; and if, through misjudgment or violence of temper, he goes beyond the necessity of the occasion, and gives a right of action to another, he cannot, as to third persons, be said to have been acting without the line of his duty, or to have departed from his master's business.   If, however, the servant, under guise and cover of executing his master's orders, and exercising the authority conferred .upon him, wilfully and designedly, for the purpose of accomplishing his own independent malicious or wicked purposes, does an injury to another, then the master is not liable.   The relation of master and servant, as to that transaction, does not exist between them.   And when it is said that the master is not responsible for the wilful wrong of the servant, the language is to be understood as referring to an act of positive and designed injury, not done with a view to the master's service, or for the purpose of executing his orders.''   We approve this as an admirable statement of the law.

It is true that, ordinarily, the question whether the brakeman's act was within the line of his duty, done for the master and in his business, is one of fact for the jury, since, ordinarily, there is conflict in the evidence.   But in this case, on the plaintiff's own testimony, the court should have granted the peremptory charge, following the cases of *Railroad Co.* v. *McAfee*, 71 Miss., 70, and *Railroad Co.* v. *Harris*, *Ib.*, 74.

*Judgment reversed and cause remanded.*