ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*

PELL.

Opinion delivered December 14, 1908.

1. RAILROADS—SCOPE OF AUTHORITY OF BRAKEMAN.—Where the rules of a railroad company prohibited any person other than the train crew from riding on a freight train, the question was properly submitted to the jury whether a brakeman was acting within the scope of his authority in ejecting a trespasser from the train while it was in motion. (Page 90.)

2. TRIAL—ARGUMENT—PREJUDICE.—Where appellee's attorney made certain statements in his argument to the jury which might be taken to be statements of fact, and might be prejudicial because not based upon the evidence, the prejudice was removed by the court instructing the jury that they should not consider any statements of fact not based upon the evidence, especially where the attorney denied having stated a fact but claimed that he was merely expressing his opinion. (Page 92.)

3. DAMAGES—EXCESSIVENESS.—A verdict of $6,000 for personal injuries will not be set aside as excessive where the testimony shows that plaintiff's foot was in a very bad condition, the bone being exposed and the muscles decayed; that erysipelas was likely to ensue; that the injured limb was an inch shorter than the other limb; that the injury would incapacitate him at least one-half in following any business requiring him to walk or stand continually; that his earning capacity before the injury was from $40 to $50, and that he had a life expectancy of 40 years. (Page 94.)

Appeal from Franklin Circuit Court, Ozark District; *Jeptha H. Evans,* Judge; affirmed.

STATEMENT BY THE COURT.

Harry Pell, a minor eighteen years of age, by his next friend, Frederick Pell, brought this suit against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for personal injuries alleged to have been received by being forcibly ejected from a moving freight train by a brakeman in the employ of the railroad company. The evidence, as detailed by Harry Pell and his companion, was that they were stealing a ride on one of defendant's freight trains from Little Rock to Hot Springs, Arkansas. Pell and his companion, Miller Keplinger, were riding on the front bumper of a car. After they had ridden a few miles, a brakeman crawled down to where they were standing and asked them if they had anything. Pell replied, "No." The brakeman then asked Keplinger, who had a pretty good hat, to trade hats with him. Keplinger refused. The brakeman then threatened to put them off at the next grade, and left them. After awhile he came back and said to them, "Are you going to trade hats?" Keplinger replied, "No." He then said, "You will have to unload." Pell told him that he was not going to get off. The brakeman then gave Pell a shove on his shoulder and kicked him off the train while it was in rapid motion. Keplinger had jumped off the car when the brakeman began to threaten them.

Wm. E. Estes, the brakeman, admitted that he told the two boys that they would have to give him the hat if they wanted to ride, and that when they refused he told them they would have to get off or unload at the next hill. He denies that he shoved or kicked Pell off the train, and says that Pell alighted safely. He says that Pell was injured in trying to get back on the train.

On cross examination, Estes said that he knew it was against the rules of the company to let any one except the train crew ride on a train like the one in question, but that he would have let the boys ride if they had given him the hat. He further testified as follows: "I never turned a fellow down when he had the price or the goods to satisfy me. Of course, I never turned in anything to the company. I mean to say I would have violated the rules of the company and let a fellow ride whenever he showed up on the train with the fare to satisfy me. I have done so in the past."

Other witnesses testified that after the occurrence Harry Pell and Keplinger made a statement in their presence in which they said that they got off the train with the intention of getting back on, and that Pell was injured in trying to get back on the train. Pell and Keplinger denied making this statement.

The train in question consisted of forty-three freight cars and the caboose. The train crew comprised the conductor and three brakemen. The rear end brakeman rode on the cars next to the caboose. The swing brakeman rode on the cars in the middle of the train. The head brakeman rode on the cars next to the engine. Estes was the head brakeman. Pell and Keplinger were riding on the front bumper of a car three or four cars back from the engine.

Pell's foot was crushed by the cars when he fell, and he has suffered the loss of four of his toes.

There was a jury trial and a verdict for the plaintiff in the sum of $6,000. Defendant has duly prosecuted an appeal to this court.

*Lovick. P. Miles,* for appellant.

1. A verdict should have been directed for defendant as requested in instruction No. 1, because: (1) Appellee failed to introduce evidence legally sufficient to prove that the brakeman

was acting within the scope of his employment, and (2) it affirmatively appeared that he was *not,* so acting. 48 Ark. 177; 75 *Id.* 579. Appellant was a trespasser, the burden being on him to show that the brakeman was an employee of appellant and was acting for it within the scope of his employment. 42 Ark. 542; 67 *Id.* 47; 75 *Id.* 579; 58 *Id.* 381.

2. The judgment should be reversed on account of improper and prejudicial conduct and argument of counsel. 71 Ark. 427; 75 Ala. 466; 70 Ark. 205; *Ib.* 179; 61 *Id.* 137; 65 *Id.* 626; 77 *Id.* 12; 74 *Id.* 256; 81 *Id.* 87.

3. It was error to refuse to permit the further cross-examination of witness Keplinger.

4. The verdict was excessive, reflecting passion, prejudice or sympathy.

*James & Fuller* and *W. W. Cotton,* for appellee.

1. Instruction No. 1 was properly refused. 48 Ark. 177; 64 N. Y. 129; 75 Ark. 585. The master, having placed the servant in a position to act for him and having put into motion the agency for providing the mischief, is bound to prevent mischievous consequences. 42 Ark. 525; 109 Mass. 154; 66 Ill. 238; 67 Ark. 47. The matter was properly submitted to the jury. Cases *supra.*

2. The argument of counsel was not improper nor prejudicial. No proper exceptions were saved. Kirby's Digest, § § 6221-6227; 75 Ark. 256; 70 *Id.* 305; 58 *Id.* 353.

3. Reversible error is not predicated on the termination of a cross-examination by the court unless there is some abuse of sound judicial discretion shown. 86 Ark. 104; 83 Ark. 258; 80 *Id.* 201.

4. The verdict is not excessive, but is amply sustained by the evidence. 75 Ark. 587.

Hart, J. (after stating the facts.) At the conclusion of the testimony counsel for appellant asked the court to direct the jury to return a verdict in its favor, and insists that there was reversible error in refusing his request.

In the case of *St. Louis, Iron Mountain & Southern Railway Company v. Grant,* 75 Ark. 579, it was held that "an assault committed by an employee of a railroad company in the course

of his employment, for the purpose of advancing its interests, and in pursuance of his real or apparent agency, is an act done within the scope of his employment, for which the railroad company will be liable, although it neither authorized nor ratified the act."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Hendricks*, 48 Ark. 177, it was held: "Whether a particular act of a servant was or was not in the line of his duty is a question for the jury to determine from the surrounding facts and circumstances, and evidence that it was the custom of the master's servants to perform such act is admissible to prove it."

In the Hendricks case, the brakeman demanded payment of fare of one Cost, a trespasser on the train. Cost had no money, and the brakeman ordered him off the train. His manner was so threatening that Cost started down the ladder of the freight car upon which he was riding, when the brakeman kicked at him and stamped upon the back of his hands, and thus caused him to loose his hold on the rungs of the ladder. COCKRILL, C. J., who delivered the opinion of the court, said:

"The fact that brakemen commonly performed the duty of ejecting such persons (trespassers) from the appellant's freight trains afforded a reasonable presumption or inference that the brakeman who ejected the plaintiff acted in the line of his duty, if the jury chose to believe that he was ejected by a brakeman for the non-payment of his fare."

Counsel for appellant insists that there is no evidence from which it can be inferred that the brakeman was acting in the line of his duty, when he ejected Pell, if he did eject him, and that the testimony only goes to the extent of showing that it was against the rules of the company for any person other than the train crew to ride upon a train like the one in question, and that the brakeman knew of the existence of this rule.

Estes, the brakeman who is alleged to have ejected Pell, said: "I knew it was against the rules of the company to let anybody but the train crew ride on a train like this one, but I would have let those fellows ride if they had given me this hat." Again he says: "I mean to say I would have violated the rules of the company and let a fellow ride whenever he showed up on the train with the fare to satisfy me. I have done so in the past."

It is admitted that it was against the rules of the company for persons other than the train crew to ride on trains like the one in question. The train consisted of forty-three freight cars and the caboose.

The conductor rode in the caboose. Obviously, it was some one's duty to enforce the rules of the company. It was impractical for the conductor to ride on the rear end of a train of forty-four cars, and alone to enforce the rule. It was the duty of the brakeman to ride upon that portion of the train assigned to them by the conductor. Estes was placed upon the front end of the train. If it was not a part of his duty to assist in enforcing the rule, he would not have violated it, as he testified he had done in the past by letting trespassers ride, and as he would have done in this case by permitting Pell and Keplinger to ride. These are reasonable inferences the jury might have drawn from Estes' testimony in connection with the surrounding circumstances, and which evidently they did draw as shown by their verdict.

Counsel for appellant has argued his position with much force, but, after due consideration, we think the evidence sufficient to sustain the verdict.

In the closing argument of the case, counsel for plaintiff stated to the jury: "The plaintiff is interested, because he will get something out of this case if he wins. Estes is interested because his job depends on his testimony." Counsel for defendant said to the court: "I object to the statement of counsel for plaintiff that Estes is interested because his job depends upon his testimony." The court said: "Counsel is arguing that to the jury." Counsel for plaintiff said: "I am expressing that as my opinion." Counsel for defendant said: "I object to your expressing an opinion." Counsel for plaintiff: "Very well, then; the jury can determine whether he is interested or not."

Continuing, counsel for appellee said to the jury: "Where is Doctor Wilson, the man who performed the operation? Why was he not brought here? Where is that school teacher we have been looking for? The Iron Mountain Railroad knows where they are." To this statement counsel for appellant objected. The court said: "That is improper." Counsel for plaintiff: "I withdraw my statement. I was stating it just as my opinion, and

do not wish the jury to consider any statement of mine outside the record, and which is not proper." The record discloses that the statement above recited was made by counsel for appellee in reply to a statement made by counsel for appellant, wherein the latter had stated in his argument to the jury that all the parties present at the operation on Pell, except Keplinger, contradicted the statements made there by Pell as to the manner in which the injury was received. Upon the objection being made to the remarks, counsel at once withdrew them, and disclaimed any intention of wishing the jury to consider any thing except the evidence shown by the record.

Proceeding with his argument, counsel for appellee said: "I tell you, gentlemen, this man Estes will not return to Ozark. He left here because he could not stand to face the music. He could not stand to face the jury, and I tell you he will not return to Ozark." Upon objection to this statement being interposed, counsel for appellee said: "I am just stating that as my opinion of this man Estes, in answer to your argument wherein you stated that Estes would return here to Ozark on the two o'clock train this afternoon, that he left simply because he was sick, as you believed, but I will withdraw my statement as to Estes and leave it to the jury."

The court thereupon said: "Brother Miles, he is just replying to your argument and giving his opinion. The jury will not consider any statement of counsel outside of the record."

As stated by the court in the case of *Kansas City, F. S. & M. Rd. Co.* v. *Sokal,* 61 Ark. 130: "Jurors should ascertain the truth from the evidence, and apply the law as given by the court to the facts as they find them, and return a verdict accordingly. Except as to those facts of which courts take judicial notice, juries should consider only the evidence adduced. Arguments by counsel of the evidence adduced and the law as given by the court are allowed only to aid them in the discharge of their duty."

Each time when objection was made to the remarks complained of, counsel for appellee stated that he was only giving his opinion, disclaimed any intention of traveling out of the record, and finally withdrew his remarks about Estes. In view of this and the fact that the court told the jury at the same time not to consider any statement of counsel outside of the record,

we do not think that the remarks made impressions upon the minds of the jury which were not removed. While the remarks of counsel in the present case are very similar to those made by counsel in the case of *St. Louis, I. M. & S. Ry. Co. v. Boback*, 71 Ark. 427, which is relied upon to sustain his contention, the subsequent action of the court and counsel making the remarks is entirely different. In the Boback case, the counsel did not withdraw his remarks, or attempt to explain that they had other meaning than a statement of a fact proved at the trial, and the court did not sustain the objection to the remarks. In the present case the record affirmatively shows that, if the jury in the first instance understood the remarks of counsel as a statement of fact, that impression was doubtless removed by the disclaimer of counsel that he intended them to have that effect, and by the admonition of the court not to consider any statement of counsel ouside of the record.

Counsel for appellant next objects that the court refused to permit him to continue the cross-examination of the witness Keplinger. Counsel was permitted to examine him minutely as to his antecedents and recent wanderings, and we do not think the court abused its discretion in stopping the cross-examination at the point where it deemed the matter of inquiry fully developed.

Counsel for appellant also insists that the verdict was excessive. If the testimony of appellee's witnesses is to be believed (and that was a matter for the jury), we do not think the verdict was excessive.

Dr. Turner testified that the injured foot was in very bad condition. That the bone was exposed, and the muscles seemed decayed. That in its present state erysipelas is likely to be caused, and that the injured limb is an inch or inch and a half shorter than the other limb. That the injury would interfere with Pell very much in standing on his feet, because he is deprived of the pivotal arch of the foot on which the weight of the body ordinarily rests, and that he would be incapacitated at least one-half in following any business requiring him to walk or stand continually.

Pell testified that his earning capacity at time of the injury was from forty to fifty dollars, and that he could not now with

any degree of success do any work which required him to be on his feet. His life expectancy after reaching the age of twenty-one was forty years.

Finding no error in the record, the judgment is affirmed.

HILL, C. J. and BATTLE, J., dissent.

HILL, C. J. (dissenting). The burden rested upon the plaintiff to prove every material fact constituting his cause of action. A necessary element to bind the company for the act of the brakeman is evidence that the brakeman was discharging a duty to the company in ejecting the trespasser. If in the line of his duty he injured him by performing his duty in an improper manner, then the company would be liable. If he was not acting in the line of his duty, the company would not be liable. There is evidence that it was against the rules of the company .for any one except trainmen to ride upon freight trains, but no evidence that the company had devolved upon brakemen the duty of enforcing that rule. Without such evidence, the plaintiff has failed, and we cannot find in this record any evidence sustaining that necessary link in the chain necessary to hold the company liable for the disgraceful conduct of the brakeman.