St. Louis & San Francisco Railroad Company *v.* Van Zant.

Opinion delivered January 8, 1912.

1. Master and servant—liability to a third person for servant's acts.—A master is not liable to a third person for the negligent or wrongful act of a servant done outside the scope of his employment unless such act was expressly authorized by the master. (Page 591.)

2. Same—liability for servant's acts.—An instruction that the jury should find for the plaintiff if he was a trespasser on defendant's train and defendant's trainmen assaulted and knocked him off the train was defective in leaving out any question as to whether the assault was committed in performance of any duty to the master or for its benefits. (Page 592.)

Appeal from Craighead Circuit Court, Jonesboro District; *Frank Smith*, Judge; reversed.

STATEMENT BY THE COURT.

This suit was brought by Walter Van Zant, a minor, by his next friend, for damages for personal injuries, alleged to have been caused by the wrongful conduct of defendant's employees in assaulting, beating and robbing him, and throwing

him from a local train, upon which he claimed to have been a passenger.

The answer denied the material allegations of the complaint, and alleged that appellee boarded a work train, which was not authorized to, and did not, carry passengers, without the knowledge or consent of the employees in charge thereof; that he paid no fare, and that if he was injured the injuries were inflicted after he left the train by persons not in charge thereof, and as a result of his abusive and insulting language to them; and denied any liability.

Appellee testified that he boarded a local freight train on defendant's line of road near its depot at Marked Tree, after being asked by one of the employees, whom he took to be the conductor, where he was going and if he had any money, to which he replied that he did and was going to Dewey's Mill, about three miles away; that, after he took his seat in the caboose and the train had gone some distance, the same man who had invited him to get on, and who had a long leather-covered book in his back pocket, and who he thought was the conductor, approached him, and he, intending to pay his fare, took out his own purse, looked in it and took a dime therefrom, the fare, and handed it to the conductor, who, hearing some money rattle in the purse, snatched it out of his hand, took about nine dollars out of it, gave him the purse back, and also took from him a pair of ladies' shoes that he had wrapped up in a bundle. That he at the time thought the conductor was trying to play a joke on him, and that, after riding a considerable distance and nothing being said about the return of his property, he walked out on the back platform of the caboose and begged the conductor to give him back his money and shoes. That he was thereupon struck in the face and knocked over the back rail of the platform off on to the ground and injured, and that this man and some of the other employees jumped on him and beat him and chased him, throwing rocks at him, running him into a barbed wire fence, in which he became entangled, and was further greatly injured.

One witness corroborated his statement as to being thrown from the train and pursued by the employees.

The testimony on the other hand tended to show that the train was a work train, hauling ballast, composed of eighteen

coal cars, the caboose being on the front end next to the engine and the Ledgerwood engine being upon the last car in the train. That appellee got upon this Ledgerwood car several hundred yards from the station while the train was standing on the siding, and was first discovered by the employees, sitting on the end of the car with his feet hanging over. That the brakeman jollied him some about the woman he was buying the shoes for, and finally there was some loud talking between them, and that when the train stopped about two miles out that the sides of the cars from which the silica or ballast had already been thrown could be closed, the brakeman ordered him to get off the car. That he did so, leaving the pair of shoes where he had been sitting, picked up a large piece of rock, came back to the edge of the car, and said, "Now, you dam white sons-of-bitches, give me my shoes." That thereupon, Dan Dixon, who belonged in the working crew and not in the train crew, kicked him in the face, knocking him down, and then jumped off the car, and pursued him a little ways, throwing two or three rocks at him. All the witnesses, three or four, on the train, corroborated this statement, and the conductor of the train stated that he did not invite him on the train; that he did not know he was on the train until after it had proceeded some distance from the station; that he did not ask him for any fare, did not collect any fare from him, and did not touch him at all and that he was not assaulted by him or by any one until after he had left the train, and then by Dan Dixon, under the circumstances already stated.

The instructions submitted the case to the jury upon two theories. One that he was a passenger, and the other that he might recover, even though he were a trespasser, the court giving on the latter theory instructions numbered 3, 5, 6, and 8, over appellant's objection, as follows:

"No. 3. If you find from the evidence that at the time plaintiff entered said train he knew or had reason to believe that said train was not intended to carry passengers, then he was not a passenger upon said train, but was in legal contemplation a trespasser, and can not recover damages for injuries received while on said train, unless said injuries were wilfully or wantonly inflicted on the plaintiff by the servants of defendant in charge of said train.

"No. 5.   You are instructed that one who boards a train having reason to believe that such train does not carry passengers is a trespasser upon said train, although he may pay his fare, and the conductor or other employees in charge of said train may expel such person from said train, using only so much force as is necessary to expel such person from the train, but this would not authorize the employees in charge of said train to wilfully or wantonly assault such person while on said train or to commit an assault upon him after he had been expelled therefrom.

"No. 6.   If you find from the evidence that the conductor or one of the employees of the defendant in charge of said train, after said train left Marked Tree, Arkansas, struck and knocked the plaintiff from said moving train, and that by reason of said blow the plaintiff fell from said train to the ground and was injured thereby, and that thereafter and immediately following said assault other servants of defendant upon said train joined in the assault upon plaintiff, and beat, wounded and otherwise injured him, and you further find from the evidence that said assaults were not made by said servants or either of them in defending themselves from the assaults of the plaintiff, and that there was no provocation on the part of the plaintiff which tended to bring about said assaults on the part of said servants, then you are instructed that if you find that such assaults were made, that the same were wilful and wanton.

"No. 8.   If you find from the evidence that plaintiff entered said train, knowing at the time or having reason to believe that said train did not carry passengers, then you are instructed that, although the plaintiff paid his fare to the conductor, he, (the plaintiff) was in legal contemplation a trespasser, and the defendant owed him no duty, other than to refrain from wilfully or wantonly injuring him.

"If you find from the evidence that the plaintiff was a trespasser, and that the servants of defendant in charge of said train assaulted, beat and knocked the plaintiff from said train and kicked him in the face, and that he was injured thereby and that plaintiff had not provoked such assault, then you are instructed to find for the plaintiff.

"However, if you find from the evidence that plaintiff was a trespasser on said train, and that the assaults committed

on him, if any, were committed by Dickson or Heslip, then you are instructed to find for the defendant, whether said assaults were wilfully or wantonly inflicted or not."

The jury returned a verdict for $2,000, and from the judgment thereon the railroad company appealed.

*W. F. Evans, W. J. Orr* and *J. H. Orr*, for appellant.

The court's instructions were based upon two theories; first, that appellee was a passenger, and second that he was a trespasser.

1. The second and fourth instructions tell the jury that if plaintiff was invited to ride by an employee in charge of the train, and paid the fare and honestly believed the train was intended for the carrying of passengers, he was a passenger. This is not a correct statement of the law. The test is not that he honestly believed that the train carried passengers, but whether he had good reason to so believe and whether the circumstances were such as to lead an ordinarily prudent person to so believe. 95 S. W. 198. The instructions are also misleading in that they make the invitation of an employee in charge a condition on which the relation of carrier and passenger may be created. 27 S. W. 119; 76 Ark. 106.

2. If appellee was a trespasser, his right to recover depends upon whether he was assaulted by an employee and whether that employee was acting within the scope of his employment. In the instructions given on this theory of the case, the court was evidently misled by the principle announced generally in a certain line of cases that the only duty a railroad company owes to a bare licensee or trespasser is not to wilfully or wantonly injure him. But every one is liable for his own wilful and wanton acts, and a master is not liable for the wilful or wanton act of his servant, unless that wrongful act was authorized or ratified, or was within the real or apparent scope of the servant's authority. Instruction 3, 5, 6 and 8 are therefore erroneous. 75 Ark. 584; 42 Ark. 552; 48 Ark. 181; 58 Ark. 386; Wood on Master & Servant, § 286; 136 Fed. 306, and cases cited; 82. S. W. 552; 162 Mass. 319, and cases cited; 93 Ark. 387; 99 S. W. 693; 76 S. W. 513; 105 S. W. 72; 68 N. J. L. 324; 119 Wis. 579.

*J. F. Gautney,* for appellee.

1. While at the common law the question whether or not one was a passenger was one of law for the court to determine, it is under our statute a mixed question of law and fact. This court has held that one who boards a freight train with the consent of the conductor and pays the fare to him has the right to presume that the train is a local one.   63 Ark. 491.

2. There was no error in failing to instruct the jury, in the event they found appellee was a trespasser, that the company was not liable unless the wrongful acts complained of were committed by the employees in charge of the train while acting within the scope of their employment.   Moreover, appellant can not raise this objection here because it failed to ask for an instruction embodying this theory.   78 Ark. 55, 62; 81 Ark. 549, 561;  84 Ark. 377;  *Id.* 399;  74 Ark. 557.

KIRBY, J., (after stating the facts).   It is contended that the court erred in giving these instructions, which, it is claimed, make the master liable for the tortious acts of his servants resulting in damages, without regard to whether the servant at the time was acting within the scope of his employment.

These instructions submit the question of the liability of the railroad to the payment of damages for the injuries inflicted upon the appellee upon the theory that he was a trespasser upon a train which did not carry passengers, and authorized them to find against the defendant if the injuries were inflicted wilfully and wantonly upon the appellee by any of the servants of the railroad in charge of the train, whether such servant was acting within the scope of his authority at the time or not.

In *Railway* v. *Hackett,* 58 Ark. 386, this court said:   "Such, in our opinion, is not the law, according to the weight of authority.   The intention with which Gallagher acted can not affect the liability of the railroad company, though it might affect the amount of damages.   *Cleghorn* v. *N. Y. Cent. & H. R. Ry. Co.,* 56 N. Y. 47.   The question is, was Gallagher, at the time he fired the pistol, acting in the course of his employment as night watchman for the railroad company?   If he was, the company is liable in damages for any wrongful act of his in the course of his employment.   Of course, if the act causing the injury was outside of the course of the servant's employment—discon-

nected with the service of the company—then the company would not be liable."

In *Sweeden* v. *Atkinson Improvement Co.*, 93 Ark. 397, the court said: "But it is also well settled that the master is not liable for an independent, negligent or wrongful act of a servant, done outside the scope of his employment. 2 Cooley on Torts, 1030; 26 Enc. 1526. The act of the servant for which the master is liable must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform, or be for the benefit of the master."

Wood, on Master and Servant, p. 540, states it as follows:

"But if the act of the servant is not expressly ordered by the master, or within the scope of his employment, the master is not liable therefor, even though done in the course of his employment. The question is whether the act was expressly or impliedly authorized by the master, and this is a question to be determined by the jury, in view of the employment, its character, the nature of the services required, the instructions given by the master, and the circumstances under which the act was done."

It is not contended that the acts causing the injury were authorized or ratified, and the appellant was only liable for them if done by its servant in the performance of his duty within the scope of his employment, which is usually a question to be determined by the jury. *St. Louis, I. M. & S. Ry. Co.* v. *Grant*, 75 Ark. 584; *St. Louis, I. M. & S. Ry. Co.* v. *Pell*, 89 Ark. 87; *St. Louis, I. M. & S. Ry. Co.* v. *Hendricks*, 48 Ark. 181; *Ward* v. *Young*, 42 Ark. 552.

Appellee insists that, if appellant desired this question submitted to the jury, it should have asked a correct instruction embodying it, and, not having done so, it can not complain of the instructions given. But the master is only liable for the acts done by his servant while in the performance of his duty in his employment, and the instructions given, leaving out this feature, do not correctly declare the law.

The second section of instruction numbered 8 authorizes the jury to find for the plaintiff, although he was a trespasser, if the servants of defendant, in charge of the train, assaulted, beat and injured him, provided he had not provoked the assault, leaving out entirely any question as to whether the

assault was committed in the performance of any duty to the master or for its benefit.

Said instructions were erroneous and prejudicial, and the judgment is reversed, and the cause remanded for a new trial.