MISSOURI PACIFIC RAILROAD COMPANY *v.* RODDEN.

4-2981

Opinion delivered April 24, 1933.

R. E. *Wiley* and *Henry Donham,* for appellant.

J. H. *Lookadoo* and *Bush & Bush,* for appellee.

MEHAFFY, J. J. H. Rodden, by his next friend, O. B. Rodden, brought this suit in the Clark Circuit Court against the Missouri Pacific Railroad Company. The facts, as testified to by appellee, are substantially as follows:

J. H. Rodden, the appellee, was about 19 years of age, and, prior to the time he alleged he was injured, he was at work at Sparenberg, Texas, and was coming home from there. He was accompanied by Earl Lawley and another boy, from Kentucky. Jack Williams met up with them at Dallas, Texas. They had been catching rides on the highway until they got to Texarkana, Arkansas, about two hours after dark, and went down to the railroad yards. They found a man working on the engines, and asked him what time they could get a train out of there to Prescott, and he told them between one and two o'clock

in the morning of February 29th. He told them where to catch the train up at the road crossing. They thought he was a trainman because he was working in the yards. Between one and two o'clock in the morning they caught a freight train out of Texarkana going to Prescott. The appellee's mother and father are dead, and he had been living with his uncle, O. B. Rodden, who brings this suit as his next friend.

There were about 65 or 70 cars in the freight train. They caught the train at the road crossing where the man working in the yards told them to catch it. They boarded the train on the east or right side. After they had gotten out of Texarkana a mile or two, a brakeman came from the direction of the engine and passed the appellee first. Appellee was on the back end of a car, and Lawley and Williams were on the front end of the next car behind him. The cars on which they were riding were 10 or 12 cars back of the engine. The brakeman passed appellee and then passed the other two boys and went on beyond them about 15 cars. When he came back by these two boys he was motioning to them and talking to them, and they reached in their pockets and handed him something. He then walked up to the car appellee was on and asked him what he was holding. Appellee told him he was broke and was going home; that he was hungry, and asked the brakeman to let him ride to the next stop. According to his testimony, the brakeman cursed him, and appellee told him he could not get off there without killing himself, the train was going so fast. The brakeman again cursed him and told him to get off or he would kill him. Appellee started down the ladder, and the brakeman stepped on his fingers. The brakeman hung his lantern on the door and kicked the appellee in the muscle of his right arm and paralyzed it, then kicked him in the head and chest. Appellee saw he was going to fall any way, and threw his head as far as possible. His foot struck a spike in the cattle guard. His head hit the ground, and about daylight he regained consciousness, and found that his boot was caught in the cattle guard. He pulled his foot out of his boot, and found the flesh clotted up.

The man that forced him off the train had on a hat, blue serge pants, blue jumper, and had a small lantern with a globe that was small at the top and big at the bottom. It had braces around it and protection bars. It was a regular railroad lantern.

Appellee's chest hurt him so that he could hardly get a deep breath without pain; his knee was a little stiff, and there was a skinned place on it.

An automobile came by on highway 67 and the driver carried appellee to the Missouri Pacific Hospital at Texarkana. Appellee told the driver how he was hurt; that he was kicked off a freight train. The man that took him to the doctor explained how it happened. The doctor said appellee was not hurt much. He grabbed appellee's foot, twisted the toes back, took a pair of scissors, went around the gash and cut the flesh, put medicine on it, and wrapped it up, and told appellee it would be all right.

Prior to his injury, appellee was a pastry cook in a restaurant, but he got sick and decided to go home. He has not been able to follow his occupation as a cook since he was injured. He cannot stand on his feet to work as he did before. He has not done anything since he was hurt.

He hitch-hiked his way from Sparenberg to Texarkana, and the reason he did not hitch-hike his way to Prescott was that he was broke and hungry, and wanted to get home and get something to eat. He did not buy a ticket because he did not have enough money. He was within fifty miles of Prescott and wanted to go on home.

The man in the yards that told appellee about the train was oiling an engine. The only member of the train crew that appellee saw when he got on the train was a man who caught the back end of the train, the caboose. Appellee was riding on a refrigerator car. The brakeman weighed from 140 to 170 pounds and was rather heavy-set. Appellee did not notice any badge on the brakeman, but noticed the way he was dressed, and that he was carrying a lantern. Appellee was unable to point out from the train crew which man it was who kicked him off.

The evidence on the part of the appellant contradicted the testimony given by the appellee. The jury returned a verdict in favor of the appellee for $2,000. The case is here on appeal.

The appellant contends that there is no substantial evidence to establish that appellee was ejected from the train by a brakeman.

Appellee testified that he was ejected by a brakeman. When asked how he knew it was a brakeman, he stated that he was dressed in blue overalls, wore a blue jumper, and was walking on top of the train from the front end towards the rear, and then walked back, and that he had a railroad lantern.

The conductor testified that, so far as he knew, there was no one on the train except employees of the railroad company wearing a railroad suit and carrying a lantern.

It is contended that there is no evidence to show that the party who kicked appellee from the train was a brakeman; no evidence that he was performing any duties. The jury had a right to infer that the person dressed as appellee says this person was dressed, carrying a lantern and walking on top of the freight train, doing what brakemen frequently do, was a brakeman.

In the case of *St. L., I. M. & S. R. Co.* v. *Hendricks*, 48 Ark. 177, 2 S. W. 783, the court said: "It is not urged that there was a failure of proof except in this particular, *viz*: That Cost and the other witnesses were not positive that the man whom they alleged was the cause of the injury was one of the company's employees. Upon his examination in chief, the plaintiff testified that the man alluded to was a brakeman on appellant's train, but on cross-examination he stated he did not know that to be a fact. He gave as the reason for his belief, however, that he saw the man on the platform at Cabot with a lantern, deporting himself as an employee; and James Jenkins, his other witness, who rode from Cabot to Little Rock on the train, and corroborated Cost's statement of the accident, testified that the man acted as a brakeman on the train between these points.

"If the jury credited the testimony that the man was for such a length of time aiding the company in operat-

ing its train, it was sufficient to justify the conclusion that he was a regular employee. Indeed, it would be difficult, in the most of these cases, to prove the relation of master and servant except by the fact that the one is known to perform service for the other, or from their course of dealing.''

It would be difficult to make any direct proof that relation of master and servant existed between any one of the train crew and the railroad company. It is a matter of common knowledge that persons dressed as the appellee testifies this brakeman was dressed, carrying a lantern and walking on top of a freight train as this man was, is a brakeman, or in the employ of the railroad company.

The rules require the trainmen to prevent trespassers from riding on freight trains, and it is the duty of the trainmen, as the evidence in this case shows, to put such persons off the train. The rules of the company require them to do this.

It is true that the rules require the trainmen to put trespassers off the train when it is not in motion, but putting trespassers off the train is a part of their duty; and, if appellee's testimony is true, that is what this man undertook to do. We think therefore that the evidence was sufficient to submit the question as to whether this man was a brakeman to the jury.

Appellant, however, says that, if appellee had sued any one of the trainmen jointly with the railroad company for the injuries which he sustained, the court would have been compelled to direct a verdict in favor of the individual trainman because there was no evidence introduced upon which a judgment against any one of the trainmen could have been sustained. That is true, because the appellee was unable to say which one of the train crew kicked him off the train, and, in order to get a judgment against any person for a wrong, the evidence must show that that particular person committed the wrong. But the suit is not against the trainman who committed the wrong, but against the railroad company, and there is no question but that the appellant is the railroad company whose employee committed the wrong. A

person might be abused, kicked from the train by any one of the trainmen and be unable to say which one it was when he sees them in court, dressed differently from the way they were at the time of the injury.

It is said that neither of appellee's companions were called to testify. His two companions were on the freight train and were not put off. The evidence shows that Williams was from Kentucky, but does not show where Lawley was from, but they were both on the train, remained on the train when appellee says he was kicked off, and they may or may not know what became of him. At any rate, the evidence is silent as to where they went and whether they knew anything about appellee's injury.

It is next contended that there is no substantial evidence that appellee was ejected from the train by a brakeman within the scope of his employment. Appellant again relies on the Hendricks case, *supra.* The court in that case said on this question: "Whether a particular act was or was not done in the line of the servant's duty is a question to be determined by the jury from the surrounding facts and circumstances." The court further said in that case: "It was the legal right of the company to eject persons attempting to ride on its trains without paying fare, and the legitimate object of the testimony was to show that the right was commonly enforced through the class of employees that ejected the plaintiff. * * * The fact that brakemen commonly performed the duty of ejecting such persons from appellant's freight trains afforded a reasonable presumption or inference that the brakeman who ejected the plaintiff acted in the line of his duty, if the jury chose to believe that he was ejected by a brakeman for the nonpayment of his fare."

Appellant calls attention to and relies on the case of *St. Louis, I. M. & S. R. Co.* v. *Pell,* 89 Ark. 87, 115 S. W. 957. This case expressly approves the doctrine announced in the Hendricks case. If the person who kicked appellee from the train was acting in the course of his employment, the railroad company was liable.

"If he was, the company is liable in damages for any wrongful act of his in the course of his employment

resulting in injury to another, though he exceeded his authority.'' *Ry. Co.* v. *Hackett,* 58 Ark. 381, 24 S. W. 881.

If, under the rules of the company, it was the duty of the trainmen to eject trespassers from freight trains, and in doing this he exceeded his authority either by putting him off the train while it was in motion, or kicking him off, in either event the railroad company would be liable.

''A servant may do an act expressly forbidden by his employer, and yet, if it be within the scope of his authority, the employer may be liable for a resulting injury. This rule is constantly enforced in cases against railroads, electric light and gas companies, and it applies to private persons who employ servants to transact their business.'' *St. Louis, I. M. & S. R. Co.* v. *Grant,* 75 Ark. 579, 88 S. W. 580, 1133; *St. Louis, I. M. & S. R. Co.* v. *Robertson,* 103 Ark. 361, 146 S. W. 482; *St. Louis, I. M. & S. R. Co.* v. *Mynott,* 83 Ark. 6, 102 Ark. 380; *St. L. S. W. Ry. Co.* v. *Mitchell,* 100 Ark. 314, 140 S. W. 136; *St. Louis-S. F. R. Co.* v. *Van Zant,* 101 Ark. 586, 142 S. W. 1144; *Chicago, R. I. & P. Ry. Co.* v. *Womble,* 131 Ark. 411, 199 S. W. 81.

Appellant cites the case of *Ill. Central Rd. Co.* v. *Latham,* 72 Miss. 32. That case seems to be not only against the weight of authority, but is in direct conflict with our decisions.

It is contended by appellant that the court erred in refusing to give its requested instructions Nos. 7 and 9. No. 7 reads as follows: ''If you find from the evidence that J. H. Rodden was assaulted by one of the defendant's employees while he was riding as a trespasser upon one of the defendant's trains, still if you further find that such employee was acting outside of the scope of his employment and contrary to instructions of his employer when committing said assault, then the defendant is not liable and you should so find.''

That instruction is erroneous because it tells the jury, among other things, that, if the employee was acting contrary to his instructions, they must find for the defendant.

No. 4, given at the request of the appellant, covers everything in No. 7 except the statement about being contrary to instructions.

No. 9 reads as follows: "If you find from the evidence that J. H. Rodden was assaulted and ejected from the train by one of the defendant's brakemen, and you further find that said brakeman assaulted the said J. H. Rodden and ejected him from the train because the said J. H. Rodden failed or refused to pay the brakeman to permit him to ride on the train, then your verdict should be for the defendant." No. 9 was correctly refused. If it was the duty of the trainmen to eject trespassers, the fact that the brakeman did this because appellee refused to pay would be immaterial.

It is next contended by appellant that the verdict is excessive. The evidence showed that the spikes stuck in appellee's foot; that his knee and chest were injured; that he is unable to do the work he did before he was injured, and that he still suffers pain. He was earning from $60 to $75 per month before the injury, and is now unable to do the kind of work he formerly did.

The facts above stated, we think, are sufficient to justify the verdict. Whether it was a brakeman who kicked the appellee off the train, and whether he did it while acting within the scope of his authority, are questions of fact, and were properly submitted to the jury.

If there is any substantial evidence to sustain a verdict, this court cannot set it aside, although we might believe that it was contrary to the preponderance of the evidence. We do not pass on the weight of evidence nor the credibility of the witnesses.

The judgment of the circuit court is correct, and is therefore affirmed.