MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. YANDELL.

4-7763                                    191 S. W. 2d 592

Opinion delivered January 14, 1946.

570

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Kenneth C. Coffelt, W. A. Waddell* and *Eugene Coffelt,* for appellee.

ROBINS, J. Ervin Yandell was killed instantly early in the afternoon of August 21, 1944, by collision of southbound passenger train of appellants with the truck in which Yandell was riding, at a public crossing a short distance north of Benton, Arkansas. In suit brought by his widow, appellee, Elsie Yandell, for the benefit of herself and Yandell's three minor children, a jury returned verdict in favor of appellees for $40,000. To reverse judgment entered on the verdict, this appeal is prosecuted.

Appellees alleged in their complaint that the death of Yandell was caused by the negligence of the railroad company in failing to give the signals for the crossing as required by law and in operating the train around a sharp curve (alleged by them to be only 300 feet from the crossing) at an excessive speed. The answer was a general denial and plea of contributory negligence.

There was a double track at the site of this accident, the east track being used for north-bound traffic and the west track for south-bound traffic; and there was a spur track almost parallel with and about 50 feet west of the west track. The crossing was for a paved highway leading from Benton to Bauxite, and it was equipped with an electric warning signal. This signal consisted of two metal posts, one north of the highway and immediately east of the north-bound track, the other south of the highway and immediately west of the spur track, on each of which was mounted an electric bell and "blinker" light which operated automatically when a train was near the crossing. The evidence showed that these signals were operating when Yandell drove on the crossing, but there was testimony that they could have been caused to operate at this time by a north-bound freight train which passed over the crossing immediately before Yandell drove on the crossing. The passenger train was traveling at a speed of about sixty miles an hour. Yandell was twenty-five years old and was earning approximately $175 per month.

While other grounds for reversal of the judgment of the lower court are asserted, these are chiefly relied upon by appellants:

I. That the evidence did not justify a finding that the collision was caused by negligence on the part of the railroad company.

II. That the evidence showed that the collision was caused by the negligence of Yandell; or, in any event, that the negligence of Yandell in driving upon the track when he did was greater than that of appellant company or its servants in charge of the passenger train which struck Yandell's truck.

III. That the verdict was excessive.

## I.

In determining whether or not the evidence adduced was sufficient to authorize the lower court to submit to the jury the question of negligence on the part of the operators of the passenger train we must give to the evidence the strongest probative force in favor of appellees that it will reasonably bear. *St. Louis-San Francisco Railway Company* v. *Whitfield,* 155 Ark. 560, 245 S. W. 323; *Wells* v. *Bentley,* 87 Ark. 625, 113 S. W. 939.

The testimony, on this phase of the case, introduced by appellees may be summarized as follows:

A photographer introduced in evidence photographs of the track, taken with his camera placed, for some of the pictures, at the approximate location of Yandell's truck immediately before it went on the track where it was struck. One of them showed a south-bound train photographed as it came in view from around the curve to the north of the crossing. The photographer testified that from his position at the crossing he could see an approaching train for a distance of about one hundred yards.

Ben H. Cox testified that he had lived for eighteen years within two hundred feet of the crossing; that there was a sharp curve north of the crossing and that from the highway where the spur track crosses it one could see a train coming from the north about four hundred feet; that there was an embankment along the track north from the crossing; that from a point about ten feet west of the rails of the south-bound track one could see about six or seven hundred feet up the track; that the automatic crossing signals continued to operate after a train had passed over the crossing and had gone one hundred and fifty feet beyond it.

Duke Ussery testified that he saw the accident from a short distance west of the crossing; that he saw the freight train going north as Yandell drove up to the crossing and stopped; that when the caboose cleared the crossing Yandell started up, a whistle sounded and the col-

lision occurred; that it was a clear day; that he had used this crossing many times and one could see up to the bend in the track from where Yandell stopped; that he did not hear any bell ring, but heard the whistle blow about twice; that when the engine ran out of the bend the whistle blew and was then blown again and the collision occurred.

Paul Drennan testified that he witnessed the accident from a point about 300 feet southeast of the crossing; that about the time the caboose of the freight train passed the crossing he heard the whistle sound; that at this time Yandell was starting toward the crossing; that he did not hear the bell on the passenger train or pay any attention to it; that the passenger train ran about 600 or 700 yards beyond the crossing before it stopped.

Collie White testified he was about one block's distance from the crossing when the collision occurred; that he did not hear any bell ringing on the train, but heard the whistle blow just before the train struck the car.

Witnesses on behalf of appellants contradicted appellees' witnesses on material features of the case, and the credibility of some of appellees' witnesses is attacked by appellants, but the credence to be given to all these witnesses was a matter solely to be determined by the trial jury. *Farmers' Club Company* v. *Emerson Mercantile Company*, 153 Ark. 614, 241 S. W. 372; *Home Life & Accident Company* v. *Scheuer*, 162 Ark. 600, 258 S. W. 648; *Laflin* v. *Brooks*, 180 Ark. 1167, 21 S. W. 2d 169; *St. Louis-San Francisco Railway Company* v. *Burford*, 180 Ark. 562, 22 S. W. 2d 378; *Gaster* v. *Hicks*, 181 Ark. 299, 25 S. W. 2d 760; *St. Louis-San Francisco Railway Company* v. *Bishop*, 182 Ark. 763, 33 S. W. 2d 383; *Missouri Pacific Railroad Company* v. *Rodden*, 187 Ark. 321, 59 S. W. 2d 599; *Greenlee* v. *Rolfe*, 187 Ark. 1162, 60 S. W. 2d 568; *Browne* v. *Dugan*, 189 Ark. 551, 74 S. W. 2d 640; *Metropolitan Life Insurance Company* v. *Pope*, 193 Ark. 139, 97 S. W. 2d 915.

By § 11135 of Pope's Digest, it is required that when a locomotive is approaching a public road crossing the bell must be rung or the whistle sounded continuously

from a point at least thirteen hundred and twenty feet distant from the crossing until the crossing has been passed.

When we give to testimony on behalf of appellees the force and credence that we must under our rules accord to it, it cannot be said that there was no substantial testimony to show that those in charge of the locomotive on the passenger train failed to sound the whistle or ring the bell constantly for a distance of at least thirteen hundred and twenty feet north from the crossing where the collision occurred.

## II.

The proof showed that when Yandell approached the railroad tracks at the crossing the automatic "blinker" signals and bells were operating and, therefore, under the provisions of § 6742 of Pope's Digest, it became Yandell's duty to stop his truck and not to proceed until he could do so safely. The evidence shows that he did stop his truck and wait until after the caboose of the north-bound freight train had passed over the crossing. There was evidence introduced by appellees to show that these automatic signal devices continued to work after a train passed over them and until the train had proceeded a distance of one hundred and fifty feet beyond the crossing, and it is urged by appellees, and was no doubt found by the jury, that Yandell, after waiting for the freight train to pass over the crossing, concluded that the continued operation of the automatic signals was caused by the departing freight train rather than a train approaching the crossing.

However, the fact that the jury, by its verdict, fixed liability on the railroad company, but at the same time returned a verdict in favor of the engineer in charge of the passenger locomotive, strongly indicates that the jury found, as it should have found, that Yandell was guilty of negligence in driving his truck upon the crossing in the face of the warning given by the automatic signals.

The statute authorizing consideration of comparative negligence in a case of this kind (§ 11153 of Pope's Digest) applies only to a suit against a railroad company

and not against an individual. In an action against an individual responsible for an injury of this kind, the doctrine of law in force before enactment of this statute, under which a traveler, injured by collision at a crossing, who was guilty of any contributory negligence causing or contributing to his injury, was precluded from recovering still applies; so that it is apparent that, since the jury by its verdict exonerated the engineer, but imposed liability upon the railroad company, it must have found that Yandell was guilty of negligence in driving upon the crossing. But, since the jury was instructed as to the provisions of the statute (§ 11153, Pope's Digest) on the effect of comparative negligence in an action of this nature, the jury must have found that the negligence of the railroad company was greater than that of Yandell. Whether, in a case like this, negligence of the injured person is greater or less than that of the railroad company is ordinarily a question for the jury. *Chicago, Rock Island & Pacific Railway Company* v. *French,* 181 Ark. 777, 27 S. W. 2d 1021. We cannot say that there is no foundation in the evidence for the appraisement of the negligence of the respective parties which was made by the jury in this case.

### III.

Section 11153 of Pope's Digest, referred to above, is as follows: "In all suits against railroads, for personal injury or death, caused by the running of trains in this state, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence."

This section has been amended by Act No. 140 of the General Assembly of Arkansas, approved March 2, 1945, but the effect of the amendment is only to include within the operation of the provisions of the previous lawsuits for damage to property, the application of the

original act having been limited to suits in which recovery for bodily injury or death was sought.

As we have pointed out above, the jury should have found and did no doubt find that Yandell was guilty of negligence in driving his truck upon the track while the warning lights were flashing and the alarm bells were sounding. Hence it was the duty of the jury to diminish the amount of the damages in proportion to this negligence; and the amount of the verdict indicates that this was not done.

We conclude that, under the circumstances of this case, any judgment for appellees in excess of $15,000 would be excessive.

We have examined other assignments of error raised by appellants and do not find any of them sufficient to require reversal herein.

If, therefore, within fifteen days from this date remittitur for all of the judgment in excess of $15,000 shall be filed by appellees, the judgment of the lower court, as so reduced, will be affirmed, otherwise the cause will be reversed and remanded for a new trial.