St. Louis, Iron Mountain & Southern Railway Company *v.* Drumright.

## Opinion delivered April 20, 1914.

1. RAILROADS—INJURY TO PERSON ON TRACK—LOOKOUT—EVIDENCE.—In an action against a railroad company for personal injuries, received by plaintiff by being struck by a moving train, the evidence held sufficient to warrant the conclusion that none of the trainmen were keeping a lookout, and that no signals were being given as the engine backed down the track. (Page 462.)

2. RAILROADS—INJURY TO PERSON ON TRACK—VERDICT—NEGLIGENCE.—The verdict of the jury in an action for damages for personal injuries received by plaintiff, by being struck by a moving engine, settles the issue that the trainmen were guilty of negligence in failing to keep a lookout and in failing to give signals. (Page 462.)

3. RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE— EVIDENCE.—Where plaintiff, a licensee upon defendant's tracks, was injured by being struck by a moving locomotive, the evidence held sufficient to show that plaintiff was not guilty of contributory negligence, in not observing the approach of the train, or in walking on the crossties. (Page 462.)

4. RAILROADS—INJURY TO PERSON ON TRACK—LICENSEE—LIABILITY.—A railroad company will be liable for injuries to a workman, due to its negligence, where it permitted the contractors to place camp cars on a switch near its main line, so that the workmen had to cross and pass up and down the main line tracks in order to reach the camp cars, and where the plaintiff, a workman, was struck by a moving engine while walking down the main line track. (Page 462.)

5. RAILROADS—DUTY TO LICENSEE—LOOKOUT.—Where a railroad company permits camp cars for workmen to be so placed that the workmen must necessarily use the railroad tracks in going to and from the camp cars, the workmen so using the tracks are not trespassers, and the railroad company owes them the statutory duty of keeping an efficient lookout. (Page 462.)

6. RAILROADS—INJURY TO LICENSEE ON TRACK—EVIDENCE.—In an action for damages due to personal injuries received by plaintiff's being struck by a moving engine, evidence of conditions surrounding plaintiff, as to his right to and reasons for, being on the track are admissible. (Page 463.)

7. TRIAL—ARGUMENT OF COUNSEL—PREJUDICE.—In an action against a railroad company for damages for personal injuries received by plaintiff by being struck by a moving train, where plaintiff was a convict, leased by the State to contractors under whom plaintiff worked, argument of plaintiff's counsel is prejudicial, unless properly rebuked, charging defendant with responsibility for the conditions under which plaintiff was obliged to work. (Page 464.)

8. TRIAL—IMPROPER ARGUMENT—PREJUDICE—HOW REMOVED.—The prejudice resulting from improper argument is removed, where, upon objection, the court admonished the jury "not to consider anything but the testimony," and counsel making the improper argument, in effect withdrew it. (Page 465.)

9. TRIAL—IMPROPER ARGUMENT—DISCRETION OF THE COURT.—The trial court has a discretion as to how far it is necessary to go, and the manner in which improper matter is to be withdrawn from the jury; and when the record shows that the court expressed disapproval and directed the jury not to consider improper remarks of counsel, the judgment will not be reversed, although it appears the offending attorney deserved harsher treatment. (Page 465.)

10. TRIAL—ARGUMENT OF COUNSEL—PREJUDICE.—The mere expression by counsel of his opinion as to the probable result of a continuance of defendant's negligent acts, is not prejudicial. (Page 466.)

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; affirmed.

*E. B. Kinsworthy* and *T. D. Crawford*, for appellant.

1. The testimony as to the location, etc., of the wash place had no connection with this case at all, and its admission only tended to confuse and mislead the jury. It should have been excluded.

2. The argument of appellee's attorney was not justified by the evidence. There was no proof that appellant had any control over the men, but, on the contrary, that the State retained the right to control their labor, and that they were in charge of wardens selected by the State. This argument was such an abuse of counsel's privilege as should have called for a rebuke from the court.

3. It was a question for the jury whether, in walking down the track, appellee was a trespasser. 38 Cyc. 995. And an instruction was erroneous, which told the jury that the burden was on the railway company to show that it kept a lookout, even though the plaintiff was a trespasser. *St. Louis, I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431. Likewise an instruction was erroneous which told the jury that if the trainmen failed to keep a lookout, and their failure to do so was the cause of plaintiff's injury, they should find for plaintiff. That instruction ignored the defense of contributory negligence.

The court's fourth instruction erred in telling the jury that if plaintiff's duties required him to cross the tracks he was not a trespasser in walking down the track. There was no necessity or occasion for his walking down the track.

4. An instruction which, in effect, told the jury that if plaintiff, before going upon the track, did stop, look and listen, he was not guilty of contributory negligence, and which nowhere told them that it was his duty to continue to look and listen until he had passed the point of danger, was clearly erroneous. 94 Ark. 524; 78 Ark. 359; 101 Ark. 315.

5. The court should have directed a verdict for the defendant. The testimony shows that the train operatives were keeping a lookout; that the fireman was

ringing the bell and that the engineer had sounded the whistle for the junction; and nowhere is there any contradiction of .their positive testimony that they did not -discover plaintiff until after he was injured. 46 Ark. 388, and authorities cited; 145 U. S. 418; 150 U. S. 245; 62 Ark. 245; 84 Ark. 270; 102 Ark. 160; 31 Fed. 531; 92 Ia. 182, 54 Am. St. Rep. 542; 3 Labatt, Master and Servant, § 3421, note 2.

*W. H. Pemberton,* for appellee.

1.   The testimony as to the wash place was competent for the purpose of showing that appellant was advised of the condition of affairs at this point, and of the necessity for plaintiff and others to cross the two main lines of the track. This knowledge was sufficient to put appellant upon notice that plaintiff and other occupants of the prison cars were liable to be entering upon or crossing its tracks at any time.

2.   The court's direction to the jury not to consider anything but the testimony and the instructions of the court was amply sufficient to remove any harmful effect of the argument of counsel.

3.   The question whether appellee was a trespasser or not, was duly submitted to the jury, in instruction 6, given by the court. If instruction 2 placed the burden on appellant to show that it kept a lookout, even though plaintiff was a trespasser, no prejudice resulted to appellant since the instruction also told the jury that the company would not be liable for failure to keep such lookout if the plaintiff was a trespasser. But instruction 2 is the law as approved by this court. 78 Ark. 28; 80 Ark. 535; 83 Ark. 68; 88 Ark. 210.

When the instructions are considered as a whole, it is found the defense of contributory negligence was not "ignored."

4.   Appellant misconstrues the seventh instruction in saying that it in effect told the jury that if plaintiff, before going upon the track, did stop, look and listen, he was not guilty of contributory negligence. It also used the words, after look and listen, "and to take such pre-

cautions as a person of ordinary prudence would take under the same circumstances to prevent being injured." And a later instruction advised the jury of plaintiff's duty to continue to look and listen. It was a question of fact to be submitted to the jury whether plaintiff was guilty of contributory negligence in failing to look and listen, and to continue so doing until the danger was past. 101 Ark. 322; 99 Ark. 171, and cases cited; 100 Ark. 533, 534; *Id.* 359, 360.

5. The court did not err in refusing to direct a verdict for the defendant. The engineer and fireman testified to a state of facts which made it a physical impossibility for them not to have seen the plaintiff. 83 Ark. 69. Cases cited by appellant are so dissimilar on the facts from this that they have no application. There is no evidence whatever to contradict plaintiff's reasonable statement that he used due and ordinary care before going on the track, the effect of which testimony showed clearly that he was not guilty of contributory negligence; and certainly he had the right to have the question of his negligence submitted to the jury, under proper instructions. 78 Ark. 361; 48 Ark. 460; 48 Ark. 333; 58 Ark. 125; 61 Ark. 549; 100 Ark. 534; 85 Ark. 531; 99 Ark. 172.

6. Taken in its most favorable light for the appellant, appellee was either an employee of the company or of its contractor. In either event it would owe him the same duties as to safety.

The lookout statute applies to railroad yards as well as other places, and is for the benefit of employees as well as others. 78 Ark. 22; 83 Ark. 68; 80 Ark. 528; 88 Ark. 205.

Where a railroad has reason to anticipate trespassers, a lookout for them must be kept. 197 Mo. 720; 91 S. W. 707; 62 S. W. 261; 79 S. W. 394; 64 S. W. 90; 81 Ark. 191; 8 L. R. A. (N. S.) 1077, note.

Appellant owed the plaintiff this duty none the less because he was not a trespasser.

McCulloch, C. J. This appeal is from a judgment of the circuit court of Hot Spring County in favor of ap-

pellee for damages on account of personal injuries inflicted by one of appellant's trains while being operated in or near the yards in Argenta.

Appellee was a State convict at the time he received his injuries, having been convicted of criminal homicide and sentenced to a term in the State penitentiary, but has been pardoned since the date of his injury. He was sixty-six years of age at the time, and was a carpenter by trade.

The convicts, or, at least, a considerable portion of them, were hired to one Reaves by the State Board of Penitentiary Commissioners, and Reaves, in turn, sublet them to Ball & Peters, who were contractors doing railroad work. Ball & Peters had a contract with appellant to do certain construction work along the track north of Little Rock, and at the time appellee's injury occurred he, with a squad of about 100 of the men, were stationed in camp cars on a sidetrack near Argenta. Ball & Peters were independent contractors, but under the Reaves contract, the State retained the right to control the labor of the convicts, and they were guarded and worked in charge of wardens selected by the State. This bunch or squad of convicts was in charge of a deputy warden, who lived in one of the camp cars, and had his family with him. Appellee was a trusty at the time, his work being to do the ordinary chores around the camp cars, make up the beds and clean the cars where the guards and other free people stayed, and, among other things, to wait on the family of the deputy warden who was in charge. The road was double-tracked along there, the east track being used by northbound trains, and the west track by southbound trains, the general direction of the road being north and south. The camp cars, about fifteen in number, were placed on a sidetrack on the west side and running parallel with the main track. The convicts had been located at that place for some time, and the situation of the cars was necessarily well known to the trainmen who operated trains. There is a conflict in the testimony as to the width of the space between the sidetrack on which the camp cars were situated and the south bound main

track, the distance being, according to the varying testimony of witnesses, from a clear space of from eighteen inches to five feet between cars occupying the two tracks. The main track curves a short distance north of the spot where plaintiff was injured, but there is a conflict as to the distance where the curve is situated. The testimony adduced by appellee tended to show that, looking from the point where appellee was injured, the approach of a train from the north could not, on account of the curve, be observed for a distance of more than 300 feet. Appellant's testimony tended to show that a train could be seen a much greater distance.

Appellee was injured by a train which came from the north while he was walking down the track. The entrances to the camp cars were on the east side of the cars, making it necessary for the convicts, when they came out of the cars, to step down on the southbound main track. There was no way to get out of the camp cars except to step out the doors on the east side, and the evidence establishes the fact that it was customary for the convicts to cross the track when necessary to do so, and to walk up and down the track in getting from one car to another. According to the testimony of the warden, when the convicts were brought out of the cars in the morning, they were lined up on the southbound track and marched along the track to the dining cars, and thence taken down the track to the work train which was to carry them out to the place of work.

There was a place across both main tracks from the camp cars where the clothes of the convicts were washed, and it was referred to in the testimony as the "wash place." The testimony shows that there was frequent passing over the tracks getting to and from the wash place, as well as passing up and down the tracks in getting to and from the cars.

Appellee was struck by a train and injured about 5:20 o'clock in the evening while he was walking southward on the south bound track. He had stepped out on the edge of the track from one of the camp cars, and it was necessary for him to walk down to the second car

below, which was occupied by the family of the warden, the distance he was required to travel being about sixty feet. He walked along the end of the ties a distance of about fifty feet when he was struck by the work train, which was backing down the track with the tender in front.

The evidence was sufficient to warrant the conclusion that none of the trainmen were keeping a lookout, and that no signals were given as the engine backed down the track.

The engineer and fireman both testified that the bell was ringing at the time, but they are contradicted by other witnesses who were in position to have heard such signal if it had been given; they also testified that they were keeping a lookout, but their testimony on that point is in conflict with that of other witnesses who detailed facts which were sufficient to lead to the conclusion that they could have seen appellee if they had been looking.

The verdict of the jury settles the issue that the men in charge of the train were guilty of negligence in failing to keep a lookout, and also in failing to give signals.

Appellee testified that when he stepped out of the camp car and down upon the end of the ties, he looked up the track as far as he could to see whether or not there was an approaching train. He stated that he did not see nor hear any train, and then proceeded to walk down the track along the end of the ties, and as he walked down the track he turned his head and looked back over his shoulder. There was a long freight train passing at the time, going north on the northbound track. The engine and twelve or thirteen cars had passed the place where appellee was walking along, and smoke in great quantities—a "big smoke," as expressed by appellee in his testimony—was being emitted from the smokestack of the engine, and drifted, or was drawn, down toward the ground between the line of camp cars and the moving train as through a funnel. Appellee continued to walk along the end of the ties until he was struck by the tender of the backing engine and knocked down. He stated

that he did not discover the approach of the engine until it struck him.

There was sufficient evidence to warrant the jury in finding that appellee looked and listened for the approach of the train from the north; that his hearing was deadened to a considerable extent by the noise of the passing freight train, and that his vision was to some extent obscured by the smoke from the freight train. This state of facts, drawing from it the inferences most favorable to appellee, warrants the finding that appellee was not guilty of contributory negligence. He was, viewing the testimony in the light most favorable to his side, rightfully on the track, for the railway company, by permitting the camp cars to be placed in that situation, where it was necessary for the men to walk the tracks, thereby gave implied permission for them to do so, and, under the circumstances of this case, it was a question for the jury to say from all the testimony whether appellee, in the exercise of this right, was guilty of contributory negligence. If he had failed to exercise any precaution at all by looking and listening, it would become our duty to say, as a matter of law, that he was guilty of contributory negligence; but the evidence is that he did look and listen to a certain extent, and it was a question for the jury to determine whether he was negligent in failing to discover the approach of the train.

Appellee was not, according to the evidence, a trespasser, but, as before stated, was on the track by permission of the company.

It is true there is evidence which would warrant the jury in finding that there was sufficient clear space for him to use between the tracks, and that he unnecessarily exposed himself to danger by walking along the end of the ties; but there was a sharp conflict in the testimony on that point. Appellee stated that there was only a space of eighteen to twenty inches between the ends of the ties, and as other testimony showed that the edge of the box cars overreached the end of the ties there was not enough space to occupy, and in order to put himself in

the clear, out of danger from a passing train, he would have had to get down under the edge of the camp cars. Other witnesses testified to a space of about three and one-half feet between the ties, and appellant's witnesses show that there was a clear space of about five feet between trains passing on those tracks. Another witness testified that there was enough room for a man to stand between two trains by standing up very straight. So it will be seen that there was a sharp conflict in the testimony, and the jury were warranted in finding that appellee was not guilty of negligence in walking on the end of the ties rather than in the space between, for the danger was, according to testimony which the jury might credit, substantially as great in walking in one place as the other.

Appellant's witnesses produce maps showing the location of the tracks, which, if accepted as correct, establish a clear space of five feet between trains. But the correctness of those maps is challenged, and there was evidence to the effect that the maps were made according to the location of the tracks now, which some testimony shows had been changed since the happening of the injury.

Learned counsel for appellant strenuously insist that the testimony fails to make out a case, and that the issue should not have been submitted to the jury.

A careful consideration of the testimony, however, convinces us that the testimony presented a disputed issue of fact upon every material question in the case, and that the court properly submitted the case to the jury.

It was left to the jury to find whether or not appellee was a trespasser, or whether he was rightfully upon the track with the knowledge and permission of the company. The camp cars were placed there in that situation by consent of the company. Even if it be conceded that the choice was made by the contractors, or by the warden, the company is responsible for accepting the choice, and can not evade the consequences of a dangerous situa-

tion to which it gave its consent. It is not contended that the servants of the company were negligent in placing the camp cars there, but it is contended, and correctly, we think, that when they consented to the creation of that dangerous situation, it was an implied assent for the convicts to use the track for necessary purposes in going to and from the cars, and it was the duty of men operating the trains to take notice of that situation and exercise ordinary care for the protection of convicts who were using the tracks. If appellee was using the track for necessary purposes in passing from one car to another, as his evidence tends to show, then he was not a trespasser, and the company's servants who were operating the train owed him the statutory duty of keeping an efficient lookout, and the court properly charged the jury that if he was not a trespasser, and was in the exercise or ordinary care for his own safety, that if the duty of keeping a lookout was not performed by the trainmen, and that his injury resulted from that omission, or from failing to give proper warnings to those who might be on the track, the company was responsible for the injury.

A great many instructions were given by the court, some at the instance of appellee, and some at the instance of appellant. Many of appellant's requested instructions were, however, modified by the court, and some refused. The assignments of error with respect to the giving and refusing of instructions are too numerous to justify a discussion of them all in this opinion, but on an examination of all of the assignments we are of the opinion that the court's charge was correct, that every phase of the case was properly submitted to the jury, and that none of the rulings of the court violated the principles of law governing the issues as herein stated.

There are, however, some other assignments of error which need to be mentioned.

One is that the court erred in permitting the witnesses to testify concerning the existence of the wash place across the tracks from the camp cars.

We think this testimony was competent for the purpose of showing the situation there and the custom with respect to the use of the tracks and the necessity for using the tracks by the convicts. It is true, if there was a privilege to cross the tracks to go to the wash place, that privilege was not being exercised by appellee at the time he was injured; but this proof was proper to place before the jury the correct situation and to demonstrate the extent of the circumstances which made it necessary for the convicts to use the tracks and the notice of such use to the company's servants who operated trains.

The next and last assignment of error relates to remarks of appellee's attorney in his closing argument. The objectionable remarks and the colloquy which took place between court and counsel appear in the record as follows:

"Counsel for plaintiff, in his closing argument, stated as follows:

" 'Now, you take up another proposition. They say this train was coming in on time; that the train was expected by 5:20, about 5:20. Gentlemen, this old man told a sad story when he said they worked them just as much as they could. He put it, "They got all that was coming to them, and, my God, gentlemen, that ain't all they got; they got human flesh and human blood and human sweat; and they brought them there, alongside of that track, where there were mosquitoes and the noise of engines, where everything utterly and absolutely prevented them from getting sleep or rest, but what is sleep or rest to those people? What is it to one of those men who hire these poor unfortunates? What is it to them that a man with fever at 104 is working in a gravel pit until he dies? What is it that these investigations are made by the board? They come up and whitewash them."

*Mr Kinsworthy:* I object to that; it has nothing to do with this case.

*Mr. Pemberton:* It is a matter of public history.

*Mr. Kinsworthy:* He is talking about investigations made by the board. That has nothing to do with this. He is doing it to try to inflame the jury.

*Court:* On either side the jury will not consider anything but the testimony.

*Mr. Kinsworthy:* Note my exceptions. I ask the court to rebuke counsel for making that kind of talk.

*Court:* I will instruct the jury not to consider anything but the evidence adduced before them and the instructions of the court.

*Mr. Kinsworthy:* I ask the court to instruct him that it is wrong to make statements of that kind.

*Court:* I don't know what statements—

*Mr. Pemberton:* He stated that these contractors got all they could out of them.

*Mr. Kinsworthy:* We are not contractors.

*Mr. Pemberton:* Now, if I have said anything that is not proper under the instructions of the court, I don't want you to consider it.

" 'To which the defendant objected, and asked the court to rebuke counsel for making such improper argument. The court refused to rebuke counsel. To which action of the court in permitting such improper argument and refusing to rebuke counsel defendant at the time excepted, and asked that its exceptions be noted of record, which was accordingly done.' "

The argument was improper, and, in the absence of some action of the court in disapproving it, and taking it from the jury, would be treated as prejudicial error which would call for reversal of the case. The attack of counsel was one which could only have been justly made upon the contractors, or the State authorities, who alone were responsible for the manner in which the convicts were worked. According to the undisputed evidence, the railway company merely received the benefit of the work through the independent contractors, and the company was not responsible for the manner in which the convicts were worked. The argument was calculated to inflame the minds of the jury against those who were responsible

for the condition described with reference to the men being overworked and given no opportunity to sleep and rest, and the danger from this argument was that the jury might get the idea from it that appellant was in some way responsible for it. Therefore, if the court had refused to do anything to prevent that misleading effect, it would have constituted prejudicial error. But the colloquy between the court and counsel shows that the court did all that it was asked to do with respect to the removal of this erroneous impression. The language used by the attorney for appellant in stating his objection shows that the basis of his objection was that the jury would understand that his client was brought under the accusation of having created the conditions under which the convicts were mistreated, and his language further shows that when the court admonished the jury to "not consider anything but the testimony," he understood that this amounted to a disapproval of the remarks by the court and a withdrawal of the same from the consideration of the jury. The attorney who made the improper remarks evidently understood it the same way, for he turned to the jury, and in effect withdrew the remarks. Appellant's counsel did not ask the court to do anything more specific in the way of disapproving the remarks or in withdrawing them from the jury except to ask that counsel be rebuked. In other words, he accepted the statement of the court as a disapproval of the remarks, but wanted a more severe rebuke administered to the counsel who had been guilty of the infraction. If he entertained any doubt whether the court was expressing disapproval of the remarks, he ought to have asked the court to make his withdrawal more specific; but he contented himself with merely asking that the counsel be rebuked.

Now, it is a matter to some extent in the discretion of the trial court as to how far it is necessary to go, and the manner in which improper matter is to be withdrawn from the jury. If nothing is done at all, then the court's refusal would be construed into an approval and a re-

versal must necessarily follow where it can be seen that a prejudicial effect might result from the argument; but where, as in this case, the court does in a manner express its disapproval, we must leave it to some extent to the discretion of the court to determine how far it is necessary to go in expressing that disapproval. Doubtless, in some cases it may be deemed necessary to rebuke counsel who is guilty of making improper remarks, but we can not say that the court has erred merely because it refuses to administer a rebuke. The trial judge is in a better situation than we are to determine how far it is necessary to go in removing the improper effects of prejudicial remarks, and where it can be seen from the record that he has expressed disapproval and directed the jury not to consider the improper remarks, it is not proper for us to reverse the judgment merely because it appears to us that the conduct of the offending attorney deserved harsher treatment.

After the incident just related, the counsel for appellee, in proceeding with his argument, made the following remarks, which were objected to:

"But, gentlemen of the jury, I say to you they started this thing in the wrong. They placed the old man and the others where death was liable to come at any minute, and not only that, gentlemen, the testimony shows that after he was injured, they still continued, and, gentlemen, they will always continue to do that until a jury says to them, 'We call a halt on such actions as that.'"

We understand these remarks to be directed to the conduct of the railway company in allowing camp cars to be placed where the men would be exposed to danger.

Now, as we have already shown, there was no charge of negligence in the complaint in this respect, but proof of this situation was competent for the purpose of showing that there was an exposure to danger which placed upon the servants of the company the duty to guard against it, in the operation of trains. It was, therefore, not an illegitimate argument to refer to this situation

and the responsibility of the railway company on account of it.

Of course, that part of the statement which admonished the jury that unless they "call a halt on such actions," the practice would continue, was mere expression of the opinion of counsel which we do not think can be treated as prejudicial.

Appellee was very severely injured, and the amount of damages fixed by the jury is very moderate. It is not claimed, either in the motion for new trial or in the argument, that the verdict is excessive.

The evidence was sufficient to support the verdict in every phase of the case, and we fail to find in the record any erroneous ruling of the court which could have had any prejudicial effect and call for reversal of the case.

Judgment affirmed.

SMITH, J., dissents.