FARMERS' CLUB COMPANY v. EMMERSON MERCANTILE COMPANY.

Opinion delivered May 22, 1922.

1. SALES—EVIDENCE.—Evidence *held* to sustain a verdict finding that a certain oil engine was in first-class condition when sold, with the exception of missing parts to be furnished by seller.

2. APPEAL AND ERROR—CREDIBILITY OF WITNESSES A JURY QUESTION.—The jury, and not the Supreme Court, are the judges of the credibility of the witnesses.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—The Supreme Court cannot review the finding of a jury where there is evidence of a substantial character to support it.

4. EVIDENCE—ADMISSION OF AGENT.—Where the authority of the seller's agent was limited to the installation of an oil engine, he could not bind the seller by an *ex parte* affidavit, though such affidavit could be used to contradict his testimony given at the trial.

5. SALES—INSTRUCTION.—Where seller furnished missing parts for an oil engine and sent an experienced man to attach them to the engine within a short time after the engine was sold, but the buyer refused to receive the parts or to permit them to be attached, it was proper to refuse to instruct the jury to find for buyer if the repair was not made within a reasonable time.

Appeal from Fulton Circuit Court, *Archie House,* Judge, on exchange; affirmed.

### STATEMENT OF FACTS.

Appellant sued appellees to recover damages for a breach of contract in the sale of an engine for its gin plant. Appellee denied any breach of contract and asked judgment against appellant for $1,000, balance due on the purchase money.

According to the evidence of appellant, on the 6th day of August, 1918, appellant's manager wrote to the Emmerson Mercantile Company asking for the condition and price of a fifty-horse power International Harvester oil engine which appellant had been informed had only been run one season and was for sale. On the 13th day of August, 1918, the manager of the Emmerson Mercantile Company wrote appellant that said company had a fifty-horse power International Harvester Company engine which had been run altogether less than three months; that it was a cylinder latest model engine and was in first-class condition; that said company had installed a sawmill in connection with its gin and this necessitated the use of steam power to consume the waste from the sawmill. A price of $1,600 cash was made on the engine, which included oil tanks, water tanks, and all equipment of the engine. Sometime later Thad W. Rowden, appellant's manager, went to Emmerson, Ark., and bought the engine in question from W. D. Wingfield, manager of appellees, for the price of

$1,600; $500 of which was paid in cash and the balance to be paid in deferred payments. Rowden told Wingfield that appellant wanted the engine for immediate use in running its gin plant, and Wingfield represented to him that the engine was in first-class condition. There were some missing parts which Wingfield said that he could get from the International Harvester Company for appellant and put them in at once. When the engine was installed, it was ascertained that it would develop but little horse-power and would not run the gin plant of appellant as represented. The engine was discovered to be in very bad condition and could not have been put in shape for that season's ginning. The various defects in the engine were pointed out by appellant's witnesses, but it is not necessary to state them in detail in order to present the issues raised by the appeal. On account of these defects appellant refused to pay for the engine, or to receive the parts necessary for its repair. Hence this lawsuit.

According to the evidence of appellees, after they had written to appellant stating the condition of the engine and its price, it was about two months before anything further was heard from appellant. About the first of October, Rowden, appellant's manager, came down to examine the engine, and in the meantime some of the parts had been taken off of it for use by appellees. Rowden examined the engine thoroughly for appellant and was told by Wingfield, who was representing appellees, that some of the parts were missing, but that otherwise the engine was in first-class condition. Wingfield said that he could supply the missing parts from the International Harvester Company and would have them attached to the engine as soon as it was set up. The missing parts were ordered from the International Harvester Company and the bill therefor amounted to something over $400. A representative of the International Harvester Company went up to appellant's place of business for the purpose of attaching

the missing parts.  He found that the engine had not been properly set on its foundation, and returned home.  Subsequently he went back for the purpose of attaching the parts, and appellant refused to take the parts out of the railroad office or have them attached to the engine.

It was also shown in evidence by appellant that the agent of the International Harvester Company had made an affidavit, at the request of the appellant, in which he stated that the engine was not in first-class condition and was so defective and worn that it could not have been repaired except for temporary use.  This agent testified at the trial that the engine was in good condition except for the missing parts, and that, after being repaired, it would last for some years, dependent upon the use of it.

The jury returned a verdict for appellees, and from the judgment rendered appellant has duly prosecuted an appeal to this court.

*Geo. T. Humphries* and *C. E. Elmore,* for appellants.

Where there is a false warranty which contains the elements of fraud and deceit in it, the party has his election to affirm the contract and sue upon the breach of warranty, or repudiate it.  100 Ark. 17; 88 Ark. 422; 93 Ark. 454; 22 Ark. 454; 53 Ark. 155; 81 Ark. 549; 110 Ark. 215.

*H. A. Northcutt, P. C. Goodwin,* and *Oscar E. Ellis,* for appellees.

HART, J. (after stating the facts).  It is earnestly insisted by counsel for appellant that the evidence is not legally sufficient to sustain the verdict.  At the request of appellant, the court instructed the jury that if it believed from the evidence that the contract was that the engine should be in first-class condition except the missing parts, and that the evidence showed it was not in first-class condition, appellant would have a right not to accept it, and might recover the amount it had paid on the purchase price together with the freight,

On the part of appellees the jury was instructed that if it believed from the evidence that the contract was, that appellees would furnish whatever parts that were missing, and which were necessary to put the engine in first-class condition, and that appellees stood ready to carry out the contract on their part, and appellant refused to allow them to do so, then the verdict should be for appellees on their counterclaim for the sum of $1,000 due on the purchase price.

The court further instructed the jury that, if it believed from the evidence that the engine was in such defective condition that it could not have been put in first-class condition, then appellant would have the right to reject the same without waiting for appellees to repair it, and appellant was entitled to recover.

No exceptions were saved to the giving of these instructions, and they substantially submitted to the jury the respective theories of the parties to this lawsuit.

We cannot agree with counsel for appellant in their contention that there was no legal evidence to support the verdict. One of the witnesses for appellees testified that if they had been allowed to put in the repairs that they ordered, on the engine, it would have been in good condition and would have lasted appellant a good long time. He said that the engine was not burned out on the inside, and that the cylinders did not need reboring. He was sent up there to repair the engine and was prevented from repairing it by appellant. He had had ten years' experience in installing machinery of this kind and seeing that it operated in a satisfactory manner.

Wingfield, the manager of appellees, also testified that the engine was in good condition and ready for operation when the missing parts were attached to it; that he ordered the missing parts to be shipped to appellant at its place of business, and sent an experienced machinist up there to attach the parts to the engine.

It is true that the evidence for appellant showed that the engine was in very bad condition and could not have

been put in condition for use except temporarily. The jury, however, were the judges of the credibility of the witnesses, and under the settled rules of this court we cannot review its finding where there is any evidence of a substantial character to support it. In other words, the question of the preponderance of the evidence is a matter for the jury trying the case, and we have no concern with it on appeal. It is our duty to uphold the verdict where there is legal evidence to support it, and the evidence for appellees, if believed by the jury, entitled them to recover the balance of the purchase price on the engine.

Counsel for appellant also assign as error the refusal of the court to instruct the jury that if it found that appellees, or their agent, notified appellant that the machinery could not be put in first-class condition, appellant had a right to reject the same, and the jury should find for appellant.

This instruction was predicated upon an affidavit made by F. B. Cooper, the agent of the International Harvester Company, who was sent by that company at the request of appellees to attach the missing parts to the engine.

At the request of appellant he made an *ex parte* affidavit to the effect that the engine could not be put in first-class condition. He was not the agent of appellees for any purpose except to install the engine. Hence he could not bind appellees by an *ex parte* affidavit as to the condition of the engine. Cooper testified as a witness in the case, and it was proper to introduce the affidavit for the purpose of contradicting his testimony given at the trial and thereby attacking his credibility as a witness.

It is also insisted by counsel for appellant that the court erred in refusing to instruct the jury that, if it found that the repair of the engine was not made within a reasonable time after the agreement to repair it, it should find for the appellant.

There was no error in refusing to give this instruction. Appellees ordered the missing parts for the engine from the International Harvester Company and got that company to send an experienced man to attach the parts to the engine. This was done within a short time after the engine was sold to appellant. Appellant refused to receive the parts or to permit Cooper to attach them to the engine, on the ground that the engine was in such defective condition that it could not be placed in first-class condition for that season's ginning. There was no issue on the failure of appellees in making repairs on the engine within a reasonable time, and on this account the court did not err in refusing this instruction.

The respective theories of appellant and appellees were submitted to the jury in instructions to which no objections were made or exceptions saved, and, there being evidence to support the verdict, the judgment must be affirmed.