MISSOURI PACIFIC RAILROAD COMPANY *v.* WATT.

4-2558

Opinion delivered July 4, 1932.

R. E. *Wiley* and *Richard M. Ryan,* for appellant.

*John L. McClellan,* for appellee.

MEHAFFY, J. The appellee, Ed Watt, began this action in the Hot Spring Circuit Court against the Missouri Pacific Railroad Company for personal injuries alleged to have been caused by the operation of one of appellant's trains at Malvern, Arkansas.

W. E. Kelly, a minor, by Zoa Kelly, mother and next friend, and Tom Belote, brought suits against the appellant for injuries alleged to have been caused by the same accident alleged in Watt's case. These cases were consolidated for trial.

It was alleged in the complaints that William Kelly was driving a truck belonging to Tom Belote, and, while attempting to cross the railroad track on Main Street in the city of Malvern, and while in the exercise of due care, the agents in charge of and operating one of appellant's trains negligently and carelessly caused the motor truck to be turned over and wrecked, and the occupants of the truck injured.

Appellant's train had stopped near the crossing, and it is alleged that, as appellees undertook to cross the track in the truck, the train was negligently, carelessly, suddenly, and without warning, started onto said crossing, thereby placing the occupants of the truck in a posi-

tion of extreme peril, and, in order to avoid being struck and run over by said train, the driver of said truck was compelled to swerve it suddenly and abruptly into the curb, turning the truck over, wrecking it, and injuring appellees.

It was alleged that the employees operating the train negligently failed to keep a lookout, and, if they had kept a lookout, they would have discovered the approach of the parties in the truck in time to have avoided the injury.

It was further alleged that the appellant maintained a flagman at the crossing whose duty it is to give signals and warning of the approach of trains to persons in vehicles and pedestrians; that said flagman was present at the time of the accident and negligently failed to give any signal or warning, and, by reason of such negligence, the parties in the truck, in the exercise of ordinary care, believed it safe to cross at the time.

The complaint then alleged the manner in which the parties were injured and a prayer for damages in each complaint. Kelly and Watt sought to recover damages for personal injuries, and Belote for damages to his car.

The appellant filed an answer to each complaint, denying all the material allegations of the complaints. It denied that it was guilty of any negligence, but that, if the parties were injured, the injuries were due to their own fault and carelessness in not stopping, looking, and listening for the approach of trains, and in disobeying the signal lights, and alleged that the accident was caused by the negligence of William C. Kelly, and that appellee Belote was negligent in permitting the truck to be driven by a young and inexperienced driver.

When the cases were called for trial, appellant filed motion to quash the jury panel, and for cause stated that Tom Belote, one of the appellees, was a member of the regular panel of the jury, and had been sitting on said petit jury and served as juror in many cases determined by the jury at that term, and had been with the jury, associated with the jurors, and had deliberated

with them, and for that reason, the appellant moved the court to quash the jury panel.

Evidence was taken on this motion. The clerk of the Hot Spring Circuit Court was called as a witness, and testified that he had a list of the petit jurors who served at the present term of court, and that Tom Belote had been serving as a special petit juror; had served for three days; that he had only served as juror at the present term of court in one case; that Belote was summoned as a special juror, and is not on the regular panel. He was summoned late Wednesday afternoon. The court overruled appellant's motion to quash the panel, and exceptions were saved.

The evidence introduced by appellees tended to show that the parties were hauling dirt from the Malvern Brick & Tile Company, and it was necessary to cross the railroad tracks of appellant at the main street crossing. They were in a Chevrolet truck and were going north at about 4:30 P. M., and were running between 10 and 15 miles per hour; that they shut off for the crossing, and put on the brakes, and brought the truck to almost a complete stop, and saw the southbound passenger train taking water, and the engine was 12 or 15 feet from the crossing. They saw the engine standing and saw the fireman on the back of the tender; noticed him reaching over to get the water nozzle. The bell was not ringing, but the flagman was standing about in line with the right sidewalk; was on the opposite side of the track from the truck, and was hacking on the telephone post with his flagstick and not looking in the direction of the truck. No signals were given by the operators of the train before starting up, and when the truck was about 30 feet from the track the occupants noticed the train beginning to move. The driver of the truck put on his brakes, and swerved to the right to keep from striking the train. The truck hit the curb and turned over.

Witness testified that no signal had been given from the train, the flagman was not out there, and nothing was done to warn the parties that the train was starting.

If the driver had not swerved, the truck would either have struck the signal sign or run in front of the engine. There was nothing the driver could have done to prevent the accident.

Witnesses then described the injuries received, and physicians were introduced who testified as to the injuries. The truck was going down a pretty steep grade, and the driver was using his brakes coming down the street. The driver was looking ahead and saw the signal lights at the crossing, and knew there was danger. He knew that the crossing was dangerous, but he saw the engine standing and saw the flagman there, and he did not give them any signal. The truck was stopped some distance from the track, but they saw the engine was not moving, saw the fireman on top of the tender, and, as no warning was given, either by the trainmen or flagman, they thought it was safe to cross the track.

The evidence on the part of the appellant tended to show that the engineer stopped the engine even with the water spout, and that the front of the engine was about the edge of the sidewalk; that there was an automatic bell ringing when they came into the station. The employees in charge of the train saw the truck coming down the street, and thought nothing of it until it got within about 20 feet of the train; that the engine was at that time moving, the engineer having received a signal from the fireman. The bell was ringing, and the flagman was in the middle of the crossing, and when the train came in, the flagman was in the middle of the street with his stop sign up. There was nothing to prevent the driver of the truck from seeing the train.

The evidence of appellees' witnesses was in conflict with the evidence introduced by appellants as to negligence. Attention will be called to such parts as necessary in discussing the issues.

The jury returned a verdict in favor of William C. Kelly for $100, for Ed Watt for $1,000, and in favor of Tom Belote for $150. Motion for a new trial was filed and overruled, and the case is here on appeal.

Appellant's first contention is that the court erred in overruling its motion to quash the panel of petit jurors, and it says that Belote had served and sat as a juror in other cases with the jury that tried his case; that he had associated daily with the jurors, and that this influenced other jurors may be seen because in the Belote case, the verdict was unanimous, and in the Kelly and Watt cases it was not unanimous. The Belote case, however, was for damages to his car, and the other cases were for personal injuries. The jury might very well agree unanimously as to the value of the car, and they might not all agree as to the amount appellees were entitled to recover for personal injuries.

Appellant quotes from 35 C. J. 333 as follows: "Where a litigant serves on a jury at a term at which he has a case to be tried by a jury, all of the other jurors with whom he has been serving are incompetent to sit in the trial of his case."

Appellant's attorney doubtless thought, when he filed his motion to quash, that Belote was a member of the regular panel. The evidence, however, shows that he was summoned as a special juror and served in one case. The record is silent as to whether he was summoned for the purpose of serving in that case alone. It does show however that he was not on the regular panel, and that he served in but one case, and it fails to show any association at all with the other members of the panel, and there is no evidence in the record tending to show that any juror who tried this case had associated with Belote at all, or even knew that he had been subpoenaed as a special juror and served in one case.

Appellant also calls attention to note one in volume 35 of C. J. 333, but there is nothing in the evidence in this case tending to show any association or unfair advantage or that any of the jurors who served in this case had at any time served with Belote. It would certainly not disqualify the panel because Belote served in one case, when there is not any evidence tending to show that he served with any of the jurors in his case.

Appellant next contends that the court erred in sending the instructions into the jury room after the jury had deliberated some time, with the word "pltf." in pencil at the left hand top corner of plaintiff's instruction No. 2, and the word "This" on plaintiff's instructions Nos. 4, 6, 8 and 12.

It appears that the penciled notations on the margin of the instructions were put there during the argument of counsel with no intention or expectation that the jury would see them. The notations were put there for the convenience of the attorney in making his argument, and no one seemed to think about it, and the attention of the court was not called to it. If the court's attention had been called to it, or there had been any request to do so, he would doubtless have erased the marks.

Whether appellant's attorney knew about the marks being there before the instructions were given to the jury is not shown by the evidence. He probably did not know of it, but there is no evidence in the record tending to show that they were noticed by the jury or influenced the jurors in any way.

It is next contended that there is no liability under the law and evidence in this case, and that the trial court should have directed a verdict in favor of appellant.

It is true that the train did not strike the truck, but an injury may be done or caused by the running of a train without the train actually striking the person or property. If the appellant was guilty of negligence in the operation of the train at the time, and that negligence injured the appellees, while they were in the exercise of ordinary care, this would be damage done and caused by the running of trains. Section 8562 of Crawford & Moses' Digest.

It was the duty of the appellees to exercise ordinary care for their own safety, and to look out for the trains, but the evidence on behalf of appellees shows that the engine was not moving, that the fireman was on the tender, and that the flagman, whose duty it was to warn

travelers, was there and gave no warning, and there was no warning given by the engine crew before starting the engine.

Persons crossing a railroad track where a flagman is kept, whose duty it is to warn travelers, and when he is standing at his usual place but does not give any warning, have the right to assume that they may cross the track with safety. Travelers must exercise ordinary care, and that means such care and precaution as a person of ordinary prudence would use under the circumstances.

It is true that they saw the signal lights flicker, and they would have known the train was there whether they had seen the lights or not, because they saw the engine. They knew the engine was not moving, and, according to their testimony, no signal was given before the engine moved.

The question of the negligence of the appellant and the question of the contributory negligence of the appellees was submitted to the jury under proper instructions. Whether one is guilty of negligence or contributory negligence is a question of fact to be determined from the evidence introduced, and, if there is any substantial evidence to support the verdict, this court is not authorized to disturb such verdict.

The crossing at which the injury occurred was where the main street of the city of Malvern crosses appellant's railroad track, and the travel is considerable, and for that reason, doubtless, a flagman is kept, and any one undertaking to cross when the flagman has indicated that it was dangerous to do so would be guilty of negligence, but to travelers knowing that a flagman was kept at this place, seeing him at his place at the time, the failure by him to give any warning to the travelers would be an invitation to cross.

There was no error in permitting defendant's witness to be asked on cross-examination questions, the answers to which tended to show that he had failed to

perform his duty. The answers to these questions would tend to show the credibility of the witness, and no prejudice could possibly have resulted from admitting this testimony.

Appellant had placed the flagman on the stand and asked him about his performance of duty at the time.

Appellant calls attention to the case of *Pugsley* v. *Tyler,* 130 Ark. 491, 197 S. W. 1177, and *Railway Co.* v. *Harrell,* 58 Ark. 454, 25 S. W. 117. It is true that you can not establish negligence in any given case by showing that the party was negligent in some other case. The evidence on the part of the appellees must show negligence on the part of the appellant, and, while you can not prove negligence by showing that one was guilty of negligence on a former occasion, one whose constant duty is to warn and protect the public at a place where there is constant travel may be asked on cross-examination, for the purpose of testing his truthfulness or credibility, what his habits have formerly been, with reference to the same matter.

Defendant offered to prove by Mr. Halbert, former city attorney of Malvern, that there was an ordinance requiring people using vehicles or automobiles to stop before going across the Main Street crossing. Court and counsel withdrew from the presence of the jury, and Halbert testified that, when he was city attorney, there was an ordinance which required drivers of vehicles to stop at intersections of streets where there were stop signs, and that during his term as city attorney people had been fined in the mayor's court for not stopping at the railroad crossing in disregard of the stop sign. Witness also testified that he did not know where the ordinance was, but knew that it was passed and published.

The court refused to admit this evidence. This was not error. Appellees admitted that there was a flagman at this crossing with a stop sign, but that he was not displaying it at the time of the accident. There was no controversy about the duty of the travelers to stop if

the sign was displayed, and the ordinance which appellant desired to introduce, according to the evidence, was with reference to stop signs at intersections, and whether there was or was not such an ordinance would in no way tend to prove negligence on the part of the appellees because, according to their evidence, there was no stop sign displayed, and it was conceded that, if the stop sign was displayed, it would be negligence to cross.

The appellant urges a reversal because of the giving of certain instructions by the trial court, and its refusal to give others. There were numerous instructions offered, some given and some refused. It would serve no useful purpose to set them out at length. After a careful examination of the instructions given, as well as those refused, we have reached the conclusion that the instructions as a whole constituted a correct guide, and the court therefore did not err in either giving or refusing instructions.

The judgment of the circuit court is affirmed.