MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. SHELL, ADMX.

4-7486                                                185 S. W. 2d 81

Opinion delivered January 29, 1945.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Tom J. Terral, Cooper Thweatt* and *Chas. B. Thweatt,* for appellee.

Robins, J. This appeal challenges four judgments in favor of appellees against appellants, based on jury verdicts, each for $6,000 damages, rendered in separate suits brought by Mrs. Zola Shell, as administratrix of the estate of her deceased husband, Clyde Shell, appellee, by Mrs. Lee May Aldridge, as administratrix of the estate of her deceased husband, Robert Aldridge, appellee, by Mrs. Vera Cheatham, as administratrix of the estate of her deceased husband, Aubrey Cheatham, appellee, and by appellee, Mrs. Doris Smith, as administratrix of the estate of her deceased husband, Vernon Smith. In each action damages in the sum of $50,000, for the benefit of the widow and next of kin, for the alleged negligent kill-

ing by appellants of the respective intestates, were sought.

On the petition of the nonresident appellant, Guy A. Thompson, Trustee for the Missouri Pacific Railroad Company, debtor, the four suits were removed to the United States District Court for the Western District of Arkansas. That court, on motions of appellees, remanded the suits to the circuit court. Answers denying all the allegations of the complaints were filed and the cases were consolidated for trial.

Clyde Shell, Robert Aldridge, Aubrey Cheatham and Vernon Smith, whose deaths are involved herein, were workmen employed at the Aluminum Plant situated some distance north of Malvern, Arkansas. Their work shift ended at 12:00 o'clock midnight. At about 1:00 o'clock in the morning of February 20, 1943, as they were returning from work to their homes in Hot Spring county in an automobile driven by Clyde Shell, and while attempting to drive over the railroad crossing, on Main Street, in the city of Malvern, they were struck and killed by fast passenger train No. 26, traveling northeast from Texarkana, toward Little Rock.

It is first urged by appellants that the verdicts of the jury were contrary to the law and the evidence. The negligence relied on by appellees consisted of alleged failure, on the part of the operators of the train, to give the signals required by § 11135 of Pope's Digest of the laws of Arkansas, and to keep a lookout as required by § 11144 of Pope's Digest. It is insisted by appellants that there was no evidence upon which a finding of negligence on the part of these employees of the railroad company could be based, and that the evidence conclusively showed that the collision was brought about solely by reason of the negligence of the driver of the car.

Main Street runs in a southeastern and northwestern direction and crosses the main line of the track of the railroad company at right angles. The train which struck the automobile was approaching from the southwest. The automobile was being driven southeast. There was a

passing track of appellant a short distance from and parallel to the main line track, and about eighty feet northwest of appellant's main line track, a track belonging to the Chicago, Rock Island & Pacific Railroad Company crossed the street.

In the middle of the street crossing, a few feet from the main line track, there was an electric "blinker" signal, which began flashing warning lights whenever a locomotive approached within 2,303 feet of the crossing. These warning lights were flashing at the time the automobile was driven onto the crossing, but it is undisputed that there was a locomotive "parked" on either side of the crossing, one about four hundred feet away facing northeast and the other closer to the crossing and facing southwest. There was evidence that the presence of at least one of these locomotives near the crossing was sufficient to cause the "blinker" lights to flash. There was some testimony from which the jury might have found that the headlights of both of these parked locomotives were burning.

The passenger train which struck the automobile was traveling at a high rate of speed. Witnesses on behalf of appellants placed the speed of the train at from fifty-five to sixty miles an hour, and trainmen testified that a speed of seventy miles per hour at that point was permissible under the company's rules. Some witnesses for appellees estimated the speed of the train as high as seventy miles per hour. The engineer in charge of the passenger train had died before the trial, but the fireman testified that the engineer had begun to sound the whistle and ring the bell about a mile from the crossing, and that these signals were kept up continuously until the crossing was reached. This testimony was corroborated to a considerable extent by numerous other witnesses. The fireman also testified that he saw the automobile approaching the crossing, and thought that it was going to stop before it reached the track, and that when he realized that it was going on the track in front of the train he cried out to the engineer, but it was then too late to avoid the collision. Air brakes were not applied until

after the collision and the train ran a distance of a quarter of a mile after striking the automobile before it could be stopped. The track at the point where the collision occurred was straight for a distance of approximately one-half mile to the southwest at which point there was a slight curve to the south. The effect of the testimony of several witnesses on behalf of appellees was that the bell was not rung as the train approached the crossing and that the whistle was not sounded until immediately before the train struck the automobile. The credibility of these witnesses is attacked by appellants, but, under the long established rule of this court, the credence to be given to the testimony of witnesses is solely within the province of the trial jury. *Farmers' Club Company* v. *Emmerson Mercantile Company,* 153 Ark. 614, 241 S. W. 372; *Home Life & Accident Company* v. *Scheuer,* 162 Ark. 600, 258 S. W. 648; *Laflin* v. *Brooks,* 180 Ark. 1167, 22 S. W. 2d 169; *St. Louis-San Francisco Railway Company* v. *Burford,* 180 Ark. 562, 22 S. W. 2d 378; *Gaster* v. *Hicks,* 181 Ark. 299, 25 S. W. 2d 760; *St. Louis-San Francisco Railway Company* v. *Bishop,* 182 Ark. 763, 33 S. W. 2d 383; *Missouri Pacific Railroad Company* v. *Rodden,* 187 Ark. 321, 59 S. W. 2d 599; *Greenlee* v. *Rolfe,* 187 Ark. 1162, 60 S. W. 2d 568; *Browne* v. *Dugan,* 189 Ark. 551, 74 S. W. 2d 640; *Metropolitan Life Insurance Company* v. *Pope,* 193 Ark. 139, 97 S. W. 2d 915.

We conclude that there was substantial testimony to support the contention of appellees that the statutory signals were not given as the train approached the crossing, and it therefore becomes unnecessary to discuss the testimony as to keeping of lookout.

Numerous cases in which it was held that one injured in a collision at a railroad crossing was precluded from recovering are cited by appellants, but none of them presents exactly the same fact situation as the case at bar. "No inflexible rule can be laid down as to when or under what circumstances a traveler at a public railroad crossing will be free from contributory negligence in going over the crossing; but each case must necessarily depend

upon its own particular facts.'' *Smith* v. *Missouri Pacific Railroad Company,* 138 Ark. 589, 211 S. W. 657.

Under the testimony presented in this case the question of contributory negligence on the part of the occupants of the automobile was one for the jury to decide. *Smith* v. *Missouri Pacific Railroad Company, supra; Memphis, Dallas & Gulf Railroad Company* v. *Thompson,* 138 Ark. 175, 210 S. W. 346; *Missouri Pacific Railroad Company* v. *Myers,* 180 Ark. 1067, 23 S. W. 2d 980; *Chicago, Rock Island & Pacific Railway Company* v. *French,* 181 Ark. 777, 27 S. W. 2d 1021; *Missouri Pacific Railroad Company* v. *Watt,* 186 Ark. 86, 52 S. W. 2d 634; *Missouri Pacific Railroad Company* v. *Brown,* 187 Ark. 1163, 59 S. W. 2d 34; *Texas & Pacific Railway Company* v. *Stephens,* 192 Ark. 115, 90 S. W. 2d 978; *Missouri Pacific Railroad Company, et al.,* v. *Westerfield,* 192 Ark. 558, 92 S. W. 2d 862.

While the warning lights were flashing when these men drove on the crossing, it appears that there were two locomotives, one standing on each side of the crossing and facing the crossing, and there was testimony that one of these would have set the ''blinker'' signal to operating. The jury might have concluded that this led the occupants of the automobile to assume that the signal was being operated as a result of the proximity of one of the locomotives standing near the crossing and that, for that reason, failure to heed this warning was not necessarily negligent.

It is, of course, the duty of anyone driving a vehicle, in approaching a railroad crossing, to look and listen for an approaching train before crossing the track, and to stop the vehicle, if it becomes necessary to do so, in order to look and listen. It is undisputed that Shell, in approaching the crossing, was driving very slowly, but there was no testimony as to whether or not he or any of the other occupants of the automobile looked or listened for a train. The switch engine was standing on a spur track, near the main line, about four hundred feet down the track in the direction of the approaching passenger.

Several witnesses—one introduced by appellants—testified that the headlight of this standing switch engine was burning. · The jury may have considered that the presence of the two locomotives, which were standing still, coupled with the failure of the operators of the passenger train to give the required signals, created a situation which did not establish negligence on the part of the driver of the automobile in proceeding to cross the track slowly.

Furthermore, the court instructed the jury, in accordance with the provisions of § 11153 of Pope's Digest, that contributory negligence on the part of the occupants of the automobile would not bar a recovery unless such negligence equaled or exceeded the negligence of the operators of the train, and that, if the jury should find that the occupants of the automobile were negligent, and that the operators of the train were negligent to a greater degree than the occupants of the automobile, the verdict in favor of the appellees should be accordingly reduced. The court also told the jury that the deceased men were engaged in a joint enterprise and that, if the negligence of the driver of the automobile was the proximate cause of the collision, there should be no recovery on account of the deaths of any of the occupants of the automobile. The evidence showed that Aubrey Cheatham and Robert Aldridge were each twenty-eight years of age and had an expectancy of 36.7 years; that Clyde Shell was thirty-two years of age and had an expectancy of 32½ years; that Vernon Smith was twenty-five years of age and had an expectancy of 38.8 years. Aubrey Cheatham had a child six years of age and one two years of age; Clyde Shell had three children, fourteen, eight and four years of age, respectively.; and Robert Aldridge had two children, three and six years of age, respectively. All of these men apparently, at the time of their deaths, had an earning capacity of from $30 to $35 per week. The fact that the jury returned a verdict for only $6,000 damages in each case might indicate that the jury took into consideration contributory negligence on the part of the de-

ceased men and made some reduction by reason thereof in the amount of damages awarded.

The question of contributory negligence of the men killed was properly submitted to the jury and it cannot be said that the finding of the jury relative thereto is not sustained by substantial testimony.

Appellant railroad company urges that the lower court erred in not sustaining its oral motion, made at the conclusion of the testimony, to remove the suits as against it to the federal court. In support of this contention it is argued that the testimony showed no negligence on the part of the resident defendant, C. F. Steed, who was fireman on the passenger train involved herein, and therefore it was conclusively established that there was a fraudulent joinder of Steed for the purpose of preventing removal of the suits to federal court.

In the case of *Kansas City Southern Railway Company* v. *Cockrell,* 169 Ark. 698, 277 S. W. 7, it appeared that the suit had been removed to the federal court on the ground that the joinder of the resident conductor as party defendant was fraudulent, and that the federal court had remanded the case to the state court. On trial in the circuit court, after the evidence was all presented, the railroad company filed a new petition and bond for removal on the ground that the evidence showed no negligence on the part of the resident defendant. This petition was denied, and the jury found in favor of the conductor but against the railroad company. In that case this court held that the lower court did not err in refusing to remove the case. To the same effect is our holding in the case of *Missouri Pacific Railroad Company, Thompson, Trustee,* v. *Thomas, Adm'x.,* 197 Ark. 565, 124 S. W. 2d 820. The oral motion to remove the suits here involved to the federal court was properly denied.

It is contended that the lower court erred in admitting certain hearsay testimony as to the speed of the passenger train involved in the collision and of other trains operated by appellant railroad company. While this testimony was not competent, it cannot be said to be

prejudicial. In the first place, there was no great difference in the testimony of witnesses for appellant and appellees as to the speed of this passenger train. One witness for appellees stated that the train was running about seventy miles an hour. Witnesses for appellants, including trainmen on both the passenger train and the standing locomotives, testified that the passenger train was traveling at a speed of from fifty-five to sixty miles an hour, but that a speed of seventy miles an hour through Malvern was permitted. The jury knew that all of this testimony was based merely upon estimates, and a difference of five or ten miles an hour in the proved speed of the train would not have materially affected the result. While appellees alleged in their complaints that the train was being operated at a high rate of speed, they did not ask the court to submit this issue to the jury, and the only instruction on the question of speed of the train was one asked by appellants and given by the court, with some modification.

"The erroneous admission of evidence is not reversible error unless it is prejudicial." 3 Am. Jur. 576. "In holding that the admission (of incompetent testimony) was not prejudicial error, the courts have conditioned their decisions upon various facts such as that the evidence was . . . of trivial importance; . . . or was immaterial; had no bearing on the issue involved, or only a slight bearing; . . . that it was cumulative and related to a fact otherwise proved by competent evidence . . ." 3 Am. Jur. 580. In the case of *Morris* v. *State,* 198 Ark. 1040, 132 S. W. 2d 785, we held that testimony erroneously admitted was not prejudicial, when the fact shown thereby was established by other testimony.

Complaint is also made by appellants as to action of the lower court in permitting a witness to testify as to failure of other trains passing through Malvern to give the statutory signals. This witness was permitted to testify that on one occasion he heard a train pass through town and it whistled only once. This testimony was improperly admitted, but it could not have been prejudicial to appellants, because, as the court told the jury, the rail-

road company was not required to sound the whistle at all, if the bell was rung; and this witness said nothing whatever about the ringing of the bell.

Appellants argue that the cause should be reversed on account of improper argument made by counsel for appellees. The argument referred to was not proper, but in each instance the lower court sustained objection to the argument complained of by appellants. The amounts of the damages awarded by the jury in this case do not reflect that the jury was unduly inflamed by any language of counsel. We cannot say that the rights of appellants were adversely affected by the objectionable argument. *Kansas City Southern Railway Company* v. *Murphy,* 74 Ark. 256, 85 S. W. 428; *Day* v. *Ferguson,* 74 Ark. 298, 85 S. W. 771; *Fort Smith Lumber Company* v. *Cathey,* 74 Ark. 604, 86 S. W. 806; *A. L. Clark Lumber Company* v. *Bolin,* 97 Ark. 344, 133 S. W. 1116; *St. Louis, Iron Mountain & Southern Railway Company* v. *Drumright,* 112 Ark. 452, 166 S. W. 938; *A. L. Clark Lumber Company* v. *Pickett,* 128 Ark. 639, 193 S. W. 793; *United Order of Good Samaritans* v. *Lomax,* 172 Ark. 330, 288 S. W. 709.

Other assignments of error, which we deem unnecessary to discuss in detail, are argued by appellants. We have carefully considered them and do not find that any of them shows prejudicial error.

The judgments of the lower court are affirmed.