Leon TIDWELL, Sr. *v.* QUIK-TO-FIX PRODUCTS, INC.
and Grecian Steak House

90-245                                                    804 S.W.2d 717

Supreme Court of Arkansas
Opinion delivered March 4, 1991
[Rehearing denied April 1, 1991.]

*J.R. Nash*, for appellant.

*Rieves & Mayton*, by: *Elton Rieves III*; and *Huckabay, Munson, Rowlett & Tilley*, by: *Beverley A. Rowlett*, for appellees.

DAVID NEWBERN, Justice. This is a negligence case in which

the jury returned a verdict in favor of the defendants, now appellees, Quik-To-Fix Products, Inc., and Grecian Steak House. The action was brought by the appellant, Leon Tidwell, Sr., who claimed to have suffered injuries due to glass or hard plastic found in meat he purchased at Grecian Steak House which had been supplied by Quik-To-Fix. Mr. Tidwell alleges three errors were committed by the trial judge: (1) refusal to allow Tidwell to impeach testimony of a Quik-To-Fix production supervisor with information from government documents, (2) refusal to halt cross-examination of Tidwell which was designed to reveal a collateral source of recovery for his injury, and (3) refusal to allow Tidwell to introduce evidence of poor sanitation and maintenance in the Quik-To-Fix production process. We hold the Court did not abuse its discretion in rejecting the evidence proffered for impeachment. As to the second point, we hold that because there was no mention of the collateral source of recovery except by counsel for Tidwell, no error occurred. The third point is not considered because it was not argued during the trial. The decision is affirmed.

On May 25, 1984, Mr. Tidwell, his wife, and another couple ate at the Grecian Steak House. Mr. Tidwell testified he felt a sharp object as he swallowed meat and that he broke a tooth on a hard object in the meat. He said he examined the meat remaining on his plate and found glass or a hard plastic object which he removed, wiped off, and handed to a waitress who took it away. The waitress testified she found such an object imbedded in uneaten meat from Tidwell's plate but denied that Tidwell had given her a separate object he claimed to have found.

Mr. Tidwell suffered nausea and a stomach ache later that evening. He testified he began "passing blood." He saw a physician three times in the following two weeks, and on his last visit, his pain had spread to his chest. He was advised he was having a heart attack and was rushed to a hospital. He contended that his concern over having ingested glass and passing blood, coupled with his previously having suffered an ulcer, caused him to have the heart attack and the resultant medical expense and pain and suffering.

## 1. Impeachment

Jessee Dominquez, Production Supervisor for Quik-To-Fix, was called as a witness by Mr. Tidwell. He testified he had been in his position for 12 years. He was asked about federal guidelines regarding meat production operations. He related there had been "normal problems." In a confusing question and answer series, he stated there had been some maintenance problems in the last three years but not in the last 12. He admitted that at one point there had been a problem about oven condensation dripping on the meat product and a problem about having flies in the room where meat was being ground. He denied that flies had been ground into the meat.

Counsel for Mr. Tidwell attempted to introduce as an exhibit documents acquired from the United States Department of Agriculture labeled "inspection reports . . . but not considered to be violation reports." In considering whether to accept the exhibit, the Court noted that the incident complained of was in 1984 while the documents dealt with Quik-To-Fix operations in 1986 and after, and they were ruled inadmissible.

In support of his contention that it was improper to reject the USDA materials, Tidwell cites *Missouri Pac. R.R. Co.* v. *Watt*, 186 Ark. 86, 52 S.W.2d 634 (1932). There it was held that questions asked of a railroad company flagman tending to show he had failed to do his duty at an intersection where a collision had occurred were proper. It was also stated in the opinion that questions about the witness's "negligence on a former occasion" could be asked. The case is inapplicable here. Tidwell's counsel was allowed to ask questions about Dominquez's conduct prior to the incident in question. That is not the issue. The issue here is whether the impeachment materials should have been admitted.

The impeachment questions in the *Missouri Pac. R.R. Co.* case went directly to the conduct of a railroad employee in conjunction with the incident under consideration. In this case, the questions asked of Dominquez were not only with respect to incidents which occurred long after the one in question, but none of the USDA materials on which the questions were based suggested conduct which could have resulted in glass or hard plastic being found in Quik-To-Fix products.

█ The only other authority cited by Tidwell on this point is *Boreck* v. *State*, 277 Ark. 72, 639 S.W.2d 352 (1982). The case is cited for this proposition: "A broad view of cross-examination is especially important where it might reveal bias on the part of a key witness." Here is what our opinion stated:

> The trial judge has considerable discretion in determining the scope of cross-examination. Rules 403 and 611(b) Unif. Rules of Evid. . . . *Shepherd* v. *State*, 270 Ark. 457, 605 S.W.2d 414 (1980). However, we have consistently taken a broad view of the right of an accused in a criminal prosecution to be confronted with the witness against him.

Needless to say, this is not a criminal case, and we can find no violation of the Court's discretion in deciding that the impeachment value of the evidence sought to be presented was considerably outweighed by possible prejudice, given the fact that the evidence had to do with events which occurred long after the one which was the subject of Mr. Tidwell's claim.

### 2. Collateral source evidence

Counsel for Quik-To-Fix and Grecian Steak House cross-examined Tidwell about his physical condition previous to the heart attack on the basis of his complaints to the Social Security Administration, including references to chest pain which occurred before May 25, 1984. Tidwell's counsel objected on the basis that the jury would become aware that Tidwell was receiving compensation from a collateral source. The Court ruled that the cross-examination based on incidents of medical and physical complaints made by Tidwell would be proper if there were no mention of Social Security. The cross-examination proceeded with questions about previous medical history and no mention of Social Security, although counsel for Quik-To-Fix and Grecian Steak House apparently was referring to some sort of file as the questions were asked.

Upon redirect examination, Mr. Tidwell's counsel referred to counsel for Quik-To-Fix and Grecian Steak House as having "waved this thing in front of the jury for twenty or thirty minutes. . . . Obviously he wants the jury to know that you were able to get Social Security benefits." He then expanded on the point by

asking how much Tidwell was being paid in benefits and by asking about his visits with doctors in conjunction with his disability and Social Security medical information requirements.

Obviously, it was Tidwell's counsel who revealed the fact that Tidwell was receiving Social Security benefits. While it is argued that his adversary was "waving" the Social Security file around, we have no way of knowing the extent, if any, to which the jury may have been made aware of the nature of whatever counsel may have referred to in the process of cross-examining Mr. Tidwell.

■ The only authority cited in support of this point consists of two cases in which we explained the collateral source rule. *East Texas Motor Freight Lines, Inc.* v. *Freeman*, 289 Ark. 539, 713 S.W.2d 456 (1986); *Evans* v. *Wilson*, 279 Ark. 224, 650 S.W.2d 569 (1983). They are of no help in deciding the issue here. We know of no basis to hold the Court's ruling permitting the questions to be asked was erroneous.

### 3. Rejection of evidence of other negligence

Mr. Tidwell argues that the evidence of other instances of negligence resulting in poor maintenance and unsanitary conditions at Quik-To-Fix, which he unsuccessfully attempted to use to impeach the testimony of Mr. Dominquez, should have been admitted as part of his case in chief. We can find no point in the record at which the USDA materials were presented to the Court on any basis other than as impeachment of Dominquez's testimony. No argument was presented to the effect that the documents should have been admitted because of their independent probative value.

■ We do not consider arguments made for the first time on appeal. *Helm* v. *Mid-America Indus., Inc.*, 301 Ark. 521, 785 S.W.2d 209 (1990); *Lovell* v. *Magnet Cove School Dist. No. 8*, 301 Ark. 94, 782 S.W.2d 41 (1990).

Affirmed.